UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| In re: Maywood Capital Corp., <u>et al.</u> | : | Chapter 11 |
| | : | Case No. 05-10987, et al. (RDD) |
| Debtors. | : | (Jointly Administered) |

---

| | | |
|---|---|---|
| In re: Alexandra Horvath, | : | Chapter 7 |
| | : | Case No. 05-60172 (RDD) |
| Debtor. | : | |

---

| | | |
|---|---|---|
| In re: Joseph Greenblatt, | : | Chapter 11 |
| | : | Case No. 05-60142 (RDD) |
| Debtor. | : | |

---

| | | |
|---|---|---|
| In re: Max Greenblatt, | : | Chapter 7 |
| | : | Case No. 05-60163 (RDD) |
| Debtor. | : | |

---

## OPPOSITION TO BANKRUPTCY TRUSTEES' MOTION TO APPROVE A SETTLEMENT AGREEMENT BETWEEN AND AMONG THE TRUSTEES AND CERTAIN DEBTORS AND OTHER PARTIES AND, IN CONNECTION WITH SUCH SETTLEMENT AGREEMENT

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

The New Jersey Bureau of Securities and Franklin L. Widmann, Chief of the New Jersey

Bureau of Securities (the "Bureau"), through Anne Milgram, Acting Attorney General of New

Jersey, submits this opposition to the Trustees' motion to approve a settlement agreement between

and among the Trustees and certain debtors and other parties and, in connection with the settlement

approval, to authorize the sale of certain real properties free and clear of liens, claims, encumbrances and interests pursuant to Section 363 of the Bankruptcy Code.

## STATEMENT OF FACTS

1.      On January 13, 2005, the Bureau filed a Verified Complaint and Order to Show Cause seeking preliminary injunctive relief as to Defendants Joseph Greenblatt ("Greenblatt"), Alexandra Horvath ("Horvath"), Max Greenblatt ("Max"), Peter Vogel, the Estate of Vera Greenblatt, Maywood Capital and other related entities ("Maywood") (collectively "Defendants"), for violations of the New Jersey Uniform Securities Law (1997), N.J.S.A. 49:3-47 et seq. (the "Securities Law") (the "State Case"). Attached as Exhibit A is a true copy of the January 13, 2005 Verified Complaint.

2.      On March 7, 2005, a preliminary injunction was granted, Defendants' assets were frozen and Richard Trenk, Esq. of Booker, Rabinowitz, Trenk, Lubetkin, Tully, DiPasquale & Webster P.C. was appointed Receiver (the "Receiver") by the Honorable Harriet F. Klein, J.S.C. Attached as Exhibit B is the March 7, 2005 Order granting the preliminary injunction and appointing the Receiver.

3.      On November 17, 1995, the Bureau issued a Cease and Desist Order against Greenblatt, Max and Maywood for violating the Securities Law, the same laws alleged in the Bureau's January 13, 2005 Verified Complaint. In 1995, the District Attorney's Office for King's County, New York obtained a series of indictments against Greenblatt and Max for numerous criminal violations, including but not limited to, grand larceny, criminal possession of a forged instrument, offering a false instrument, and engaging in a scheme to defraud, Greenblatt is now serving three to nine years as a result. As part of the probation Greenblatt agreed to repay $5.0 million, however Greenblatt used funds from Maywood investors to pay that restitution. In addition Greenblatt has been indicted in Hackensack New Jersey, for allegedly bouncing checks, those

charges are still pending. Greenblatt has plead guilty to HUD charges, and is awaiting sentencing in federal court.

4.      The subject of this motion ("Trustees' Motion") is the approval of the proposed settlement agreement (the "Settlement Agreement") between: (1) John S. Pereira, Esq., as Trustee for the Maywood Debtors; (2) Ian Gazes, Esq., as Trustee for Horvath and Greenblatt; (3) Gregory Messer, Esq., as Trustee for Max Greenblatt; (4) Richard Trenk, as New Jersey State Court Receiver; (5) Horvath, individually; (6) Max, individually; and (7) Boris Davydov ("Davydov"), individually, for the sale of the NYC Condo, Rego Park, and Florida Condo to Boris Davydov ("Davydov"), and the transfer of the Westhampton Property to the Maywood Estate. Attached as Exhibit C is a copy of the Settlement Agreement.

5.      On November 2, 2004, February 19, 2005, and March 10, 2005, Maywood filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

6.      On December 8, 2005, Horvath filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On March 31, 2006, Horvath's Chapter 11 was converted to one under Chapter 7. Horvath is the owner of record and remains in possession of a condominium located at 188 East 70th Street, Unit 5C, New York 10021 ("NYC Condo") and a single family residence located at 3 Bridle Path, Westhampton, New York 11978 ("Westhampton Property").

7.      On December 6, 2005, Max filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On March 31, 2006, Max's Chapter 11 case was converted to one under Chapter 7. Max remains in possession of a condominium in Florida ("Florida") and a single family residence in Rego Park, New York ("Rego Park").

## ARGUMENT

8.     As a creditor of the debtors in the above-captioned bankruptcy cases, the Bureau opposes the approval of the Settlement Agreement at this time because the Bureau does not have enough information regarding the source of the funds that Davydov will use to purchase the three properties. Although pursuant to the Settlement Agreement the Receiver and Trustees are supposed to receive information regarding the source of Davydov's funds to purchase the three properties and will have the opportunity to withdraw from the Settlement Agreement if not satisfied, the Bureau will not be afforded the same opportunity. (See Exhibit C)

9.     Davydov is not an unknown third party, "Boris Davydov, an individual introduced to the transactions contemplated by the Settlement Agreement by Max Greenblatt...." (See Trustees Motion, footnote 5)

10.     The Bureau is suspect of any individual that is introduced to a transaction by any of the debtors because of the State Case, Horvath's and Max's involuntary conversions from Chapter 11 to Chapter 7, and Greenblatt's criminal history.

11.     Although information regarding the source of Davydov's funds will supposedly be disclosed before the closings on the properties, it was not disclosed prior to the Trustees' Motion, nor was it disclosed prior to the signing of the Settlement Agreement. No hardship would be created to Davydov if this information were disclosed now, as oppose to before the closings.   Even the Trustees and Receiver have demonstrated concern over the source of the funds as evidenced by the "Whereas" clause in the Settlement Agreement and footnote 5 in the Trustees' Motion requiring the disclosure of the source of the Davydov's funds. (See Exhibit C and Trustees' Motion, footnote 5)

12.     On June 30, 2006, I sent a letter to: (1) John Pereira, Esq., of LeBoeuf, Lamb, Green & MacRae, LLP, Trustee for the Maywood Consolidated Bankruptcies; (2) John Campo, Esq. of

LeBoeuf, Lamb, Green & MacRae, LLP, attorney for Trustee John Pereira; (3) David Carlebach, Esq., attorney for Max Greenblatt; (4) Schuyler Carroll, Esq., attorney for Boston Investment Group, (5) Richard Trenk, Esq., New Jersey Court Appointed Receiver; (6) Sam Della Fera, Jr., Esq., attorney for Richard Trenk; (7) Abe Backenroth, Esq. and (8) Mark Frankel, Esq. of Backenroth, Frankel, & Krinsky, LLP, attorneys for Alexandra Horvath; (9) Gregory Messer, Esq., Trustee for Max Greenblatt; and (10) Ian Gazes, Esq., trustee for Joseph Greenblatt and Alexandra Horvath. The June 30, 2006 letter requested that the Trustees and others in the related bankruptcies provide information to the Bureau. "If information, such as the parties to the transaction, the source of the funds, appraisals of the properties, the contract price, etc., is not provided to me in advance for my client's review, my client may feel compelled to direct me to oppose any such motions for approval in the Superior and Bankruptcy Courts." Attached as Exhibit D is a copy the June 30, 2006 letter.

13.     To date, I have not received any material information or evidence regarding the source of the funds, including bank statements, receipts, paychecks, transfer records, deeds, tax returns, or anything else that would prove the source of Davydov's funds.

14.     Disclosure of the funds could have been included in the Settlement Agreement or the motion. Instead, there has only been promises of future disclosure, and that disclosure will only be to the "Trustees and the Receiver." Although creditors have been noticed of this motion, creditors have not been provided the necessary information to make a fully informed decision as to whether to oppose the Settlement Agreement.  (See Exhibit C and Trustees' Motion, footnote 5)

15.     Furthermore, "...pursuant to separate agreements between Davydov, Max and Alexandra, it is contemplated that Alexandra will remain in possession of the NY Condo, and Max will remain in possession of the Max Properties." (See Trustees' Motion, footnote 5)

16.     The Bureau opposes the Settlement Agreement and therefore the Trustees Motion because the transaction is not at arms length, the market value of the properties exceeds $2.7 million, there are cases against the debtors alleging fraud, the Trustees and Receiver have concerns regarding the source of the funds, the source of the funds being used to effectuate the transaction could have but were not disclosed, and the debtors are going to remain in possession of the properties,. (See Exhibit C)

17.     The Bureau does not oppose the transfer of the Westhampton Property to the Maywood Estate or the sale by the Maywood Estate of the Westhampton Property under Section 363 of the Bankruptcy Code.

## CONCLUSION

18.     For all the foregoing reasons, the Bureau respectfully requests that the Court deny the Trustees' motion.


Dated: September 19, 2006

ANNE MILGRAM
ACTING ATTORNEY GENERAL OF NEW JERSEY


By: _____
Christopher W. Gerold (CG 6467)
Deputy Attorney General

# EXHIBIT A

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY
Division of Law, 5th Floor
124 Halsey Street
P.O. Box 45029
Newark, New Jersey 07101
Attorneys for Plaintiffs



By: David M. Puteska
    Deputy Attorney General
    (973) 648-4802

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION COUNTY OF ESSEX
**Docket No. ESX** C - 15-05

| | | |
|---|---|---|
| PETER C. HARVEY, Attorney General of New Jersey and FRANKLIN L. WIDMANN, Chief of the New Jersey Bureau of Securities Securities, | : : : : : : | Civil Action |
| Plaintiffs, | : : | **VERIFIED COMPLAINT** |
| v. | : : | |
| JOSEPH GREENBLATT, individually, MAX GREENBLATT, individually and as co-Executor of the Estate of Vera Greenblatt, PETER F. VOGEL, individually and as Co-Executor of the Estate of Vera Greenblatt, ESTATE OF VERA GREENBLATT, JEROME M. ROSENTHAL, ALEXANDRA HORVATH, MAYWOOD CAPITAL CORP., a New Jersey corporation, MAYWOOD MANAGEMENT CORP., a New York corporation, TUMBLERS, INC., a New York corporation, TUMBLERS II, INC., a New York corporation, AP CONSTRUCTION ASSOCIATES, INC., a New York corporation, MAYWOOD CONSOLIDATED PROPERTIES, INC., a New York corporation, MAYWOOD CONSTRUCTION CORP., a New York corporation, | : : : : : : : : : : : : : : : : : : : : : : : : : | |

VALUE CAPITAL GROUP, INC.,         :
     a New York corporation,      :
942 ATLANTIC AVE. REALTY CORP.,    :
     a New York corporation,      :
113 BLAKE AVE. REALTY CORP.,      :
     a New York corporation,      :
11 BROOKLYN AVE. REALTY CORP.,     :
     a New York corporation,      :
883 CAULDWELL AVE. REALTY CORP.,   :
     a New York corporation,      :
162 CENTRAL AVE. REALTY CORP.,     :
     a New York corporation,      :
164 CENTRAL AVE. REALTY CORP.,     :
     a New York corporation,      :
917 EAGLE AVENUE REALTY CORP.,     :
     a New York corporation,      :
216 EDGECOMBE AVE. REALTY CORP.,   :
     a New York corporation,      :
2278 EIGHTH AVE. REALTY CORP.,     :
     a New York corporation,      :
1230 FRANKLIN AVE. REALTY CORP.,   :
     a New York corporation,      :
67 HANCOCK ST. REALTY INC.,       :
     A New York corporation,      :
1055 HERKIMER AVE. REALTY CORP.,   :
     a New York corporation,      :
190-01-190-13 HOLLIS AVE. REALTY CORP., :
     a New York corporation,      :
2006 HONEYWELL AVE. REALTY CORP.,   :
     a New York corporation,      :
161 HULL ST. REALTY CORP.,       :
     a New York corporation,      :
242 LENOX AVE. REALTY CORP.,      :
     a New York corporation,      :
2093 MADISON AVE. REALTY CORP.,    :
     a New York corporation,      :
2093 MADISON LLC,             :
     a New York corporation,      :
64 PATCHEN AVE. REALTY LLC,      :
     a New York limited liability   :
         company,           :
653-655 ROGERS AVE. REALTY CORP.,   :
     a New York corporation,      :
2035-2037 SEVENTH AVE. REALTY CORP.,   :
     a New York corporation,      :
957 ST. NICHOLAS AVE. REALTY CORP.,   :
     a New York corporation,      :

133 SUYDAM ST. REALTY CORP.,  
     a New York corporation,  
135 SUYDAM ST. REALTY CORP.,  
     a New York corporation,  
173 UTICA AVE. REALTY CORP.,  
     a New York corporation,  
49-51 & 55-57 WYONA ST. REALTY CORP.,  
     a New York corporation,  
243 EAST 118TH ST. REALTY CORP.,  
     a New York corporation,  
65-67 EAST 125TH ST. REALTY CORP.,  
     a New York corporation,  
77 EAST 125TH ST. REALTY LLC,  
     a New York limited liability  
         company,  
79 EAST 125TH ST. CORP.,  
     a New York corporation,  
79 EAST 125TH STREET REALTY LLC,  
     a New York limited liability  
         company,  
27 EAST 131ST ST. REALTY CORP.,  
     a New York corporation,  
6 EAST 132ND ST. APARTMENTS CORP.,  
     a New York corporation,  
6 EAST 132 ST. LLC,  
     a New York limited liability  
         company,  
313 EAST 140TH ST. REALTY CORP.,  
     a New York corporation,  
335 EAST 140TH ST. REALTY CORP.,  
     a New York corporation,  
522 EAST 148TH ST. REALTY CORP.,  
     a New York corporation,  
108 WEST 119TH ST. APARTMENTS CORP.  
     A New York corporation,  
121 WEST 122ND ST. CORP.,  
     a New York corporation,  
148 WEST 124TH ST. REALTY CORP.,  
     a New York corporation,  
308 WEST 127TH ST. REALTY CORP.,  
     a New York corporation,  
358-360 WEST 127TH ST. REALTY CORP.,  
     a New York corporation,  
360 WEST 127TH ST. REALTY CORP.,  
     a New York corporation,  
18 WEST 129TH ST. REALTY CORP.,  
     a New York corporation,

108 WEST 130TH ST. REALTY CORP.,  :
    a New York corporation,  :
304-306 WEST 133RD ST. REALTY CORP.,  :
    a New York corporation,  :
118-120 WEST 137TH ST. REALTY CORP.,  :
    a New York corporation,  :
142 WEST 139 ST. REALTY LLC,  :
    a New York limited liability  :
        company,  :
459 WEST 147TH STREET REALTY CORP.,  :
    a New York corporation,  :
459 WEST 147TH ST. REALTY LLC,  :
    a New York limited liability  :
        company,  :
535 WEST 147TH ST. REALTY CORP.,  :
    a New York corporation,  :
549 WEST 147TH ST. REALTY CORP.,  :
    a New York corporation,  :
308 WEST 148TH ST. REALTY LLC,  :
    a New York limited liability  :
        company,  :
515 WEST 148TH ST. REALTY CORP.,  :
    a New York corporation,  :
540 WEST 148TH ST. REALTY CORP.,  :
    a New York corporation,  :
536 WEST 149TH ST. REALTY CORP.,  :
    a New York corporation,  :
452 WEST 150TH STREET REALTY CORP.,  :
    a New York corporation,  :
510 WEST 159th ST. REALTY CORP.,  :
    a New York corporation,  :
544 WEST 160TH APARTMENTS CORP.,  :
    a New York corporation,  :
559 WEST 185TH ST. REALTY LLC,  :
    a New York limited liability  :
        company,  :
                                    :
                    Defendants.     :
_____ :

Plaintiffs, Peter C. Harvey, Attorney General of New Jersey,

having offices at 124 Halsey Street in the City of Newark, County

of Essex, State of New Jersey, and Franklin L. Widmann, Chief of

the New Jersey Bureau of Securities (the "Bureau"), having offices

at 153 Halsey Street in the City of Newark, County of Essex, State of New Jersey, through their attorney, Peter C. Harvey, Attorney General of New Jersey (Deputy Attorney General, David M. Puteska, appearing), say:

## STATEMENT OF THE CASE

1.   Plaintiffs bring this civil action under N.J.S.A. 49:3-69(a)(2) of the New Jersey Uniform Securities Law (1997) (N.J.S.A. 49:3-47 to 76) (hereinafter the "Securities Law"), for the following violations of the Securities Law: N.J.S.A. 49:3-52(a) (employing a device, scheme or artifice to defraud relating to the offer, sale or purchase of securities); N.J.S.A. 49:3-52(b) (making materially false and misleading statements and omitting facts necessary to make statements made not misleading relating to the offer, sale or purchase of securities); N.J.S.A. 49:3-52(c) (engaging in an act, practice, or course of business which operates as a fraud or deceit upon any person); N.J.S.A. 49:3-56(a) (acting as an unregistered investment adviser, unregistered broker-dealer, or agent thereof); N.J.S.A. 49:3-56(h) (employing unregistered agents); and N.J.S.A. 49:3-60 (selling of unregistered securities).

2.   The Attorney General also brings this action pursuant to the New Jersey Racketeering Influenced and Corrupt Organizations ("RICO") laws, N.J.S.A. 2C:41-1, et seq., for violations of such laws, specifically, N.J.S.A. 2C:41-2(a) and N.J.S.A. 2C:41-2(c).

-5-

**PARTIES**

3.  Plaintiffs, Peter C. Harvey, Attorney General of New Jersey, and Franklin L. Widmann, Chief of the Bureau, bring this action to enforce the provisions of the Securities Law, and the Attorney General also brings this action to enforce the provisions of the New Jersey RICO Laws.

4.  At all relevant times, defendant Joseph Greenblatt ("J. Greenblatt") was a shareholder, officer, director, manager and/or managing member of the defendant entities.

5.  J. Greenblatt is not now, nor has he ever been registered with the Bureau in any capacity.

6.  Defendant Max Greenblatt ("M. Greenblatt") is named as a defendant both individually and as co-executor of the Estate of Vera Greenblatt.  M. Greenblatt is the father of defendant J. Greenblatt.

7.  M. Greenblatt is not now, nor has he ever been, registered with the Bureau in any capacity.

8.  Peter Vogel ("Vogel") is a disbarred New Jersey attorney who served as outside and subsequently in-house legal counsel for defendant Maywood Capital Corporation ("Maywood Capital"). Following his disbarment, Vogel was and is an employee and/or agent of Maywood Capital.

9.  Defendant Vogel is the co-executor of the Estate of Vera Greenblatt.

10. Vogel is not now, nor has he ever been registered with the Bureau in any capacity.

11. Defendant Jerome Rosenthal ("Rosenthal") is an employee and/or agent of Maywood Capital.

12. Rosenthal solicited Florida investors for Maywood Capital to invest in the securities offered by Maywood Capital.

13. Rosenthal referred investors to defendant J. Greenblatt who would complete the securities sales process.

14. Upon information and belief, Rosenthal received salary and/or commissions for his services.

15. The Estate of Vera Greenblatt (the "Estate of V. Greenblatt") is not named in the substantive counts of this Verified Complaint, however, upon information and belief, the Estate of V. Greenblatt has received direct or indirect proceeds of the fraud. Thus, the Estate of V. Greenblatt is named as a defendant for the purposes of ancillary relief including the freezing of estate assets and appointment of a receiver over same.

16. V. Greenblatt was the mother of defendant J. Greenblatt and was the wife of defendant M. Greenblatt.

17. Defendant Alexandra Horvath ("Horvath") is the wife of defendant J. Greenblatt.

18. Defendant Horvath is not named in the substantive counts of this Verified Complaint, however, upon information and belief, Horvath has received direct or indirect proceeds of the fraud.

Thus, Horvath is named as a defendant for the purposes of ancillary relief, including the freezing of her assets and appointment of a receiver over same.

19. Defendants J. Greenblatt, M. Greenblatt, Vogel and Rosenthal are hereinafter identified as the "Individual Defendants."

20. Defendant Maywood Capital is a New Jersey corporation that was incorporated on February 13, 1996. At the time of Maywood Capital's incorporation, and for much of the activity detailed in this Complaint, its principal place of business was East 80 Route 4, Suite 215, Paramus, New Jersey. As of April 27, 2004, Maywood Capital's principal place of business has been 27 East 131st Street, New York, New York.

21. At all relevant times, defendants J. Greenblatt and M. Greenblatt were members of the Board of Directors of Maywood Capital.

22. Defendant Maywood Management Corporation ("Maywood Management") is a New York corporation. The purpose of Maywood Management is to manage the properties that Maywood Capital and its affiliated companies owned.

23. At all relevant times, defendants J. Greenblatt and M. Greenblatt were members of the Board of Directors of Maywood Management.

24.  Defendants Tumblers, Inc. ("Tumblers") and Tumblers II, Inc. ("Tumblers II") are New York corporations.

25.  At all relevant times, defendants J. Greenblatt with the support and assistance of M. Greenblatt and Vogel controlled and managed Tumblers and Tumblers II.

26.  At all relevant times, V. Greenblatt was the Chairman of Tumblers and Tumblers II.

27.  Defendant AP Construction Associates, Inc.  ("AP Construction") is a New York corporation.

28.  At all relevant times, defendant J. Greenblatt controlled and managed AP Construction.

29.  Defendant Maywood Consolidated Properties, Inc. ("Maywood Consolidated") is a New York corporation.

30.  At all relevant times, defendant J. Greenblatt, with the support and assistance of M. Greenblatt and Vogel, controlled and managed Maywood Consolidated.

31.  Defendant Maywood Construction Corporation ("Maywood Construction") is a New York corporation.

32.  At all relevant times, defendant J. Greenblatt controlled and managed Maywood Construction.

33.  The registered agent for service of process for both Maywood Consolidated and Maywood Construction is listed as "Greenblatt, 220 East 65th Street, New York, New York."

34. On or about March 18, 2004, defendants Vogel and J. Greenblatt incorporated Value Capital Group, Incorporated ("Value Capital") in New York.

35. Upon information and belief, J. Greenblatt, M. Greenblatt and Vogel are using Value Capital to solicit money from investors and engage in violations of the Securities Law.

36. The Individual Defendants created and/or operated a series of shell entities whose primary, and often only, asset was real estate purchased for use to secure investments from individuals.

37. The Individual Defendants managed and maintained control over all corporate defendants with no direct control residing in the investors.

38. The Individual Defendants, acting alone or in concert with one or more of them, created the entities at the place and on the date listed in the following chart:

| Name of Corporate Defendant | Place of Incorporation | Date of Incorporation |
|---|---|---|
| 942 Atlantic Ave. Realty Corp. | New York | September 1999 |
| 113 Blake Avenue Realty Corp. | New York | August 1999 |
| 133 Blake Ave. Realty Corp. | New York | August 1999 |
| 11 Brooklyn Ave. Realty Corp. | New York | October 1999 |
| 883 Cauldwell Ave. Realty Corp. | New York | September 1999 |
| 162 Central Ave. Realty Corp. | New York | December 1999 |
| 164 Central Ave. Realty Corp. | New York | December 1999 |
| 917 Eagle Ave. Realty Corp. | New York | September 1997 |

| | | |
|---|---|---|
| 216 Edgecombe Ave. Realty Corp. | New York | March 2000 |
| 2278 Eighth Ave. Realty Corp. | New York | August 1996 |
| 1230 Franklin Ave. Realty Corp. | New York | January 2000 |
| 67 Hancock St. Realty Inc. | New York | May 1996 |
| 1055 Herkimer Ave. Realty Corp. | New York | October 1999 |
| 190-01 - 190-13 Hollis Ave. Realty Corp. | New York | April 1997 |
| 2006 Honeywell Ave. Realty Corp. | New York | December 1999 |
| 161 Hull St. Realty Corp. | New York | September 1999 |
| 242 Lenox Ave. Realty Corp. | New York | February 1996 |
| 2093 Madison Ave. Realty Co. | New York | November 1999 |
| 2093 Madison LLC | New York | March 2004 |
| 64 Patchen Ave. Realty LLC | New York | October 2002 |
| 653-655 Rogers Ave. Realty Corp. | New York | October 1999 |
| 2035-2037 Seventh Ave. Realty Corp. | New York | February 1997 |
| 957 St. Nicholas Ave. Realty Corp. | New York | January 2000 |
| 133 Suydam St. Realty Corp. | New York | July 1999 |
| 135 Suydam St. Realty Corp. | New York | December 1999 |
| 173 Utica Ave. Realty Corp. | New York | December 1997 |
| 49-51 & 55-57 Wyona St. Realty Corp. | New York | February 1997 |
| 243 East 118th St. Realty Corp. | New York | May 1999 |
| 65-67 East 125th Street Realty Corp. | New York | May 1996 |
| 77 East 125th St. Realty LLC | New York | January 2002 |
| 79 East 125th St. Corp. | New York | March 2001 |
| 79 East 125th St. Realty LLC | New York | September 2001 |
| 27 East 131st St. Realty Corp. | New York | February 1999 |

| | | |
|---|---|---|
| 6 East 132nd St. Apartments Corp. | New York | October 1997 |
| 6 East 132 St. LLC | New York | April 2004 |
| 313 East 140th St. Realty Corp. | New York | August 1999 |
| 335 East 140th St. Realty Corp. | New York | September 1999 |
| 522 East 148th St. Realty Corp. | New York | February 1999 |
| 108 West 119th St. Apartments Corp. | New York | January 1998 |
| 121 West 122 Street Realty Corp. | New York | November 1995 |
| 148 West 124th St. Realty Corp. | New York | January 1999 |
| 308 West 127th St. Realty Corp. | New York | August 1999 |
| 358-360 West 127th St. Realty Corp. | New York | December 1996 |
| 360 West 127th St. Realty Corp. | New York | November 2000 |
| 18 West 129th St. Realty Corp | New York | November 1999 |
| 108 West 130th St. Realty Corp. | New York | March 1999 |
| 304-306 West 133rd St. Realty Corp. | New York | March 1998 |
| 118-120 West 137th St. Realty Corp. | New York | October 1996 |
| 142 West 139th St. Realty LLC | New York | July 2002 |
| 459 West 147th St. Realty Corp. | New York | September 1996 |
| 459 West 147th St. Realty LLC | New York | September 2002 |
| 535 West 147th St. Realty Corp. | New York | March 2000 |
| 549 West 147th St. Realty Corp. | New York | July 1996 |
| 308 West 148th St. Realty LLC | New York | May 2002 |
| 515 West 148th Realty Corp. | New York | May 1996 |
| 540 West 148th St. Realty Corp. | New York | June 1996 |
| 536 West 149th St. Realty Corp. | New York | May 1998 |
| 452 West 150th St. Realty Corp. | New York | June 2000 |

| 510 West 159th St. Realty Corp. | New York | November 1999 |
| 544 West 160th Apartments Corp. | New York | January 1998 |
| 559 West 185th St. Realty LLC | New York | November 2002 |

<u>**THE DEFENDANTS' WRONGFUL CONDUCT**</u>

<u>**Maywood Capital Fraud Scheme**</u>

39. The current fraud committed by the defendants involves the solicitation of investors by placing advertisements in newspapers offering a 14% interest in "safe" mortgages. The advertisements stated that the mortgages were ideal for IRA's, Keoghs, pensions and personal portfolios.

40. Entities controlled by the Individual Defendants would allegedly purchase properties for renovation and or resale through Maywood Capital. Maywood sold securities to investors in these properties.

41. Investor funds were invested in the entity owning the property and secured by mortgage interests in the property.

42. Frequently, Maywood Capital created new entities to be the actual record owner of the properties. Each property was purportedly owned by an entity that usually had the same name as the street address of the property.

43. The properties were residential dwellings located in New York City neighborhoods.

44. J. Greenblatt controlled the day-to-day activities including the financial decisions of the entities.

45. In order to secure the financing necessary to purchase real estate, J. Greenblatt solicited investors in the states of California, Florida, Massachusetts, New Jersey and New York, among others, to invest in properties in need of repair that Maywood would renovate and then resell at a profit. Maywood then sold to investors interests in the properties that were securities.

46. In reality, the properties controlled by defendants were over-mortgaged, thus significantly reducing the value of the investments. The properties did not produce the unrealistic profits promised to investors and, in certain cases, the defendants did not own the properties that they mortgaged to investors.

47. More than 100 investors invested more than $42 million in investments, not including unsecured loans or unpaid interest payments and penalties that have accrued.

48. Investor funds were placed in "suspension" or "suspense" accounts on Maywood Capital's records by defendants Vogel and J. Greenblatt so the secured interests of existing investors could be reassigned to allow for additional moneys to be placed in mortgages on buildings.

49. The first investors' mortgage interests were extinguished and they became unsecured creditors.

50. These transfers of the investors' interests on Maywood Capital's records occurred without investor knowledge.

51. Approximately 150 mortgage assignments to investors were not recorded due to problems with title work and associated fees.

52. The following three real estate transactions are examples of some of defendants' fraudulent activity:

**559 West 185 Street, New York, New York (the "559 Property").**

53. In January of 2003, investor Laura Taubes and her husband, the late Frank Taubes, were solicited by defendant J. Greenblatt.

54. The Taubeses were asked to invest in the 559 Property. They were told by defendant J. Greenblatt that in order to secure their investment, they would receive a first mortgage interest with a 14% interest rate of return on the 559 Property with an additional profit at the sale of the building. Defendant J. Greenblatt stated that he was in the process of purchasing the building. The Taubes invested $310,000 in the building through a security sold by Maywood. Mrs. Taubes was later informed by her husband that the closing was routine. Several weeks later, Mrs. Taubes learned through her attorney that the deed was not filed because Maywood Capital stopped payment on the check to the seller, Shapur Paul Sohayegh. Despite promises to the contrary, and the payment of significant sums for investment, Mrs. Taubes never had a security or ownership interest in the 559 Property, nor did she ever receive a return on her principal investment of $310,000 from defendants.

55. Between January 10, 2003 and February 26, 2003, defendants J. Greenblatt and Maywood Capital received total investments of $810,000 from approximately eleven investors in the 559 Property.

56. Mrs. Taubes and other investors never had an ownership interest in the property because Maywood Capital never owned the property.

**459 West 147 Street, New York, New York (the "459 Property").**

57. Between October 8, 2002 and April 15, 2003, Maywood Capital and defendant J. Greenblatt received $968,000 in total investments from thirteen investors in the 459 Property, of which $400,000 was in suspense.

58. On October 4, 2002, title for the 459 Property was vested with Alex Stewart and was then granted to Neighborhood Restore Housing Development Fund Corporation on November 20, 2003. The investors who invested through defendant J. Greenblatt $968,000 never had an ownership interest in the 459 Property because Maywood Capital and/or its affiliated entities never had an interest in the property from the time they solicited these investments.

**64 Patchen Ave., Queens, New York (the "64 Patchen Property").**

59. On December 19, 2002, defendant J. Greenblatt received $205,000 from Richard and Cynthia Malkin as an investment in the 64 Patchen Property.

60. The 64 Patchen Property was owned by 64 Patchen Realty Corp., an entity that was not affiliated with defendants J. Greenblatt and Maywood Capital or its affiliated entities, from March 5, 1992 until November 21, 2003. Ownership of the 64 Patchen Property was then granted to Neighborhood Restore Housing Development Fund Corporation. The Malkins were left with no ownership interest in the 64 Patchen Property because Maywood Capital and/or its affiliated entities never had an interest in the property.

## Misappropriation of Investor Funds for Personal Expenses

61. Funds maintained in individual accounts for individual properties were transferred to Maywood Capital's main corporate account at various banks at the end of each day, which resulted in funds designated for the various properties being co-mingled with Maywood's corporate account. The defendants co-mingled investor funds and treated the various entities as their own personal bank accounts using investor funds for personal expenses.

62. Disbursements were made from defendant Maywood Capital accounts for:

(A) monthly payments on defendant M. Greenblatt's home in Rego Park, New York and condominium in Florida;

(B) payment of various personal expenses of defendant J. Greenblatt and his wife, Horvath such as travel, clothing purchases from Saks Fifth Avenue and Neiman Marcus, jewelry and gifts; and

(C) payment of personal expenses for Vogel.

63. The funds in the Maywood Capital account were used to pay for numerous credit card bills for personal expenses incurred by defendants J. Greenblatt, M. Greenblatt, Vogel and Horvath.

64. The payments for personal expenses of defendants J. Greenblatt, M. Greenblatt, Vogel and Horvath were labeled as "officer loans" in the Maywood accounting records.

65. Defendants J. Greenblatt, M. Greenblatt and Vogel have received more than $9.4 million in "officer loans" from investor funds, which they used to pay their personal expenses and to maintain their lifestyle.

66. Defendant J. Greenblatt received more than $8,832,960 in officer's loans to pay personal expenses for himself and his wife, Alexandra Horvath, which included charges at Neiman Marcus, the Ritz Carlton and Polo/Ralph Lauren.

67. Defendant Vogel received over $200,151 in officer loans even though he is not listed as an officer of Maywood Capital or its affiliated entities.

68. Defendant M. Greenblatt received at least $61,354 in officer loans.

69. Defendant Maywood Capital also paid salaries from January 2002 until March 2004 to the following defendants: J. Greenblatt: ($602,484.21); Vogel ($298,465.67); M. Greenblatt: ($173,077.80); and V. Greenblatt ($60,119.16).

-18-

70. The investors were not informed that investor funds would be used for the personal benefit and enrichment of J. Greenblatt, M. Greenblatt or Vogel, nor were such transactions authorized by investors.

71. In circumstances where proper authorization was obtained from investors to change first mortgages to second mortgages, J. Greenblatt stopped payment on the checks for such transactions after closing thus rendering the mortgages impossible to record because the deals were not consummated.

## Prior History of Securities Violations

72. On November 17, 1995, the Bureau issued a Cease and Desist Order against J. Greenblatt, M. Greenblatt and Maywood Funding, Incorporated ("Maywood Funding"), an entity owned and controlled by the Greenblatts (the "C&D Order").

73. In the C&D Order, the Bureau Chief found that J. Greenblatt, M. Greenblatt and Maywood Funding violated the New Jersey Uniform Securities Law (1967), specifically N.J.S.A. 49:3-56 (a) and N.J.S.A. 49:3-56(h), by acting as unregistered agents and/or broker-dealers, and employing unregistered agents in the offer and sale of unregistered securities in and from New Jersey.

74. Pursuant to the C&D Order, J. Greenblatt, M. Greenblatt and Maywood Funding were prohibited from acting as unregistered broker-dealers and/or employing persons to act as unregistered agents in violation of the N.J.S.A. 49:3-56 (a) & (h). The C&D

Order also prohibited Maywood Funding, J. Greenblatt and M. Greenblatt from offering, promoting or selling unregistered securities in or from New Jersey in violation of N.J.S.A. 49:3-56(b).

75. The C&D Order remains in full force and effect.

76. Defendants J. Greenblatt and M. Greenblatt have again violated N.J.S.A. 49:3-56, among other statutes in the Securities Law.

77. During April through August of 1995, the District Attorney's Office for Kings County, New York, obtained indictments against J. Greenblatt and M. Greenblatt for numerous criminal violations including, but not limited to, grand larceny, criminal possession of a forged instrument, offering a false instrument and engaging in a scheme to defraud. The Greenblatts pled guilty to each indictment.

78. Howard Singer ("Singer"), a New York attorney, was appointed by a New York Court as a receiver to oversee the five million dollars ($5,000,000) in restitution J. Greenblatt and M. Greenblatt were required to pay back to aggrieved investors as a result of J. Greenblatt and M. Greenblatt's criminal activity.

79. Upon information and belief, J. Greenblatt and M. Greenblatt caused the restitution payments to Singer to be paid from Maywood Capital's account (i.e., using the money from

investments by new investors to pay the restitution to the earlier investors).

### Ongoing Value Capital Fraud

80. On or about March 18, 2004, Vogel and J. Greenblatt incorporated Value Capital.

81. Bank records filed by Value Capital indicated that defendant J. Greenblatt and M. Greenblatt are officers of Value Capital.

82. Defendant Value Capital is located at 304-306 West 133rd Street, New York, New York 10030-2702.

83. Upon information and belief, the Greenblatts and Vogel are now utilizing Value Capital as their primary corporation to continue the fraud described herein.

84. Vogel tried to place a Value Capital advertisement with the Investor's Business Daily to solicit investors, which was virtually identical to prior Maywood Capital advertisements.

85. On April 27, 2004, Maywood moved their offices from Paramus New Jersey to New York City. Banking records indicate that Maywood Capital, Maywood Management and Value Capital all are using 2082 Madison Ave as their address.

86. Value Capital has solicited additional money from new investors, including $165,000 from Nissan Perla for the purchase of 242 Lenox Ave. This property is a Maywood property which has been mortgaged to Maywood investors in the amount of $1,005,000.

87.  Value Capital banking records also reflect an additional deposit of $95,000 from Mr. Perla for unknown investment.

88.  Value Capital Account records further indicate wire transfers between Value Capital and the other Maywood entities and payments to Maywood investors and J. Greenblatt and Horvath.

89.  The defendants, under the banner of Value Capital, are continuing to defraud Maywood investors and raise money from new investors to continue the Ponzi scheme.

## COUNT I

**Fraud in Connection with the Offer, Sale or Purchase of Securities in Violation of N.J.S.A. 49:3-52(a).**

90.  Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if fully set forth herein.

91.  The Individual Defendants and defendant entities, acting in concert with each other, employed a scheme to defraud New Jersey investors in violation of N.J.S.A. 49:3-52(a), by engaging in the conduct described in this Verified Complaint, which includes:

> (i)   failing to register the securities sold to investors with the Bureau and failing to advise investors that the securities were required to be registered but were not;
>
> (ii)  co-mingling investor funds;
>
> (iii) using investor funds for the payment of personal expenses;
>
> (iv)  using investor funds for the payment of sums to individuals including J. Greenblatt, M. Greenblatt and Vogel under the guise of "Officer Loans;" and
>
> (v)   using investor funds to pay restitution pursuant to a guilty plea entered in Kings County, New York by J. Greenblatt and M. Greenblatt for securities fraud.

92.  Each violation of N.J.S.A. 49:3-52(a) is a separate violation of the statute and is cause for the imposition of a civil monetary penalty for each separate violation, pursuant to N.J.S.A. 49:3-70.1.

## COUNT II

**Materially False and Misleading Statements
and/or Omissions in Connection with the Offer,
Sale or Purchase of Securities in Violation of
N.J.S.A. 49:3-52 (b).**

93. Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if fully set forth herein.

94. The Individual Defendants and defendant entities, acting in concert with each other, made materially false and misleading statements and/or omissions in connection with the offer, sale or purchase of Securities in violation of N.J.S.A. 49:3-52, by engaging in the conduct described in this Verified Complaint, which includes:

    (i)        promising investors 14% interest in "safe" investments plus a bonus upon the conclusion of their investments;

    (ii)      omitting that J. Greenblatt and M. Greenblatt were ordered to cease and desist from the selling of securities by the Bureau in November 1995;

    (iii)     omitting that J. Greenblatt and M. Greenblatt had been charged and pled guilty to criminal securities fraud violations in Kings County, New York in 1997;

    (iv)      omitting that as a result of the guilty plea in Kings County, that J. Greenblatt and M. Greenblatt were required to pay $5,000,000 in restitution to investors;

    (v)       omitting that defendants were using investor funds to pay the restitution agreed to as part of the Kings County guilty pleas;

(vi)     omitting to investors that vast sums of money
         were syphoned from various Maywood entities as
         "Officer Loans;" and

(vii)    omitting to investors that investor funds were used
         to pay the personal expenses of J. Greenblatt, M.
         Greenblatt, Vogel and/or Horvath.

95.    Each violation of <u>N.J.S.A.</u> 49:3-52 is a separate
violation of the statute and is cause for the imposition of a civil
monetary penalty for each separate violation, pursuant to <u>N.J.S.A.</u>
49:3-70.1.

<u>COUNT III</u>

**Engaging in a Course of Business that Operates
as a Fraud or Deceit upon Any Person.
N.J.S.A. 49:3-52(c)**

96.    Plaintiffs repeat and reallege the allegations in the
preceding paragraphs as if fully set forth herein.

97.    The Individual Defendants and defendant entities conduct,
including but not limited to the following:

(i)    selling unregistered securities;

(ii)   co-mingling investor funds;

(iii)  using investor funds for the payment of
       personal expenses;

(iv)   using investor funds for the payment of
       vast sums to individuals including J.
       Greenblatt, M. Greenblatt and Vogel under
       the guise of "Officer Loans;"

(v)    using investor funds to pay restitution
       pursuant to a guilty plea entered in
       Kings County, New York by J. Greenblatt
       and M. Greenblatt for securities fraud;
       and

-25-

> (vi) repeatedly issuing checks to investors
> and others for which insufficient funds
> were available,

were acts, practices and courses of business which operated as frauds or deceit upon the investors and others, in violation of N.J.S.A. 49:3-52(c).

98. Each violation of N.J.S.A. 49:3-52(c) is a separate violation of that statute and is cause for the imposition of a civil monetary penalty for each separate violation pursuant to N.J.S.A. 49:3-70.1.

## COUNT IV

**The Individual Defendants Acted as Unregistered Broker-Dealers or Agents Thereof, in Violation of N.J.S.A. 49:3-56(a)**

99. Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if fully set forth herein.

100. From at least 1995 until the present, the Individual Defendants, acting in concert with each other, offered to buy, bought, offered to sell, or sold securities to, from, or within, New Jersey.

101. None of the Individual Defendants has ever been registered with the Bureau in any capacity.

102. Notwithstanding the fact that J. Greenblatt and M. Greenblatt were ordered to cease and desist from selling unregistered securities by the Bureau in its November 17, 1995 C&D Order and that they were not registered with the Bureau in any

capacity, J. Greenblatt and M. Greenblatt continued to engage in the sale of securities individually, and through the defendant entities, in violation of N.J.S.A. 49:3-56(a).

103. Each offer to buy, purchase, offer to sell, or sale of securities by any of the unregistered defendants is a violation of N.J.S.A. 49:3-56(a).

104. Each violation of N.J.S.A. 49:3-56(a) is a separate violation of the statute and is cause for the imposition of a civil monetary penalty for each separate violation, pursuant to N.J.S.A. 49:3-70.1.

### COUNT V

**The Defendant Entities Employed Unregistered
Agents in Violation of N.J.S.A. 49:3-56(h)**

105. Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if fully set forth herein.

106. The defendant entities employed unregistered agents or representatives in effecting or attempting to effect transactions in securities from, to or within New Jersey.

107. The defendant entities violated N.J.S.A. 49:3-56(h), which prohibits any broker-dealer from employing an agent who is not registered with the Bureau.

108. Each instance of the defendant entities' employment of an unregistered agent constitutes a separate violation of N.J.S.A. 49:3-56(h).

109. Each violation is cause for the imposition of a civil monetary penalty for each separate violation, pursuant to N.J.S.A. 49:3-70.1.

## COUNT VI

### Offering and Selling Unregistered Securities In Violation of N.J.S.A. 49:3-60

110. Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if fully set forth herein.

111. The securities sold by the Individual Defendants and defendant entities, through the defendant entities' officers, directors, employees and agents, acting in concert with each other, were securities, as defined in N.J.S.A. 49:3-49(m) of the Securities Law.

112. The securities offered or sold to, from or within New Jersey by the Individual Defendants and/or defendant entities or through the defendant entities' officers, directors, employees and agents, acting in concert with each other, were required to be registered with the Bureau.

113. The securities offered or sold to, from or within New Jersey by the Individual Defendants and defendant entities or through the defendant entities' officers, directors, employees and agents, acting in concert with each other, were not registered with the Bureau as required by N.J.S.A. 49:3-60 nor were they exempt from registration.

114. Each offer to sell and sale by the Individual Defendants and/or defendant entities or through the defendant entities officers, directors, employees and agents, acting in concert with each other, of unregistered securities was made in violation of N.J.S.A. 49:3-60.

115. Each violation of N.J.S.A. 49:3-60 is a separate violation of that statute and is cause for the imposition of a civil monetary penalty for each separate violation, pursuant to N.J.S.A. 49:3-70.1.

## RICO COUNTS

## COUNT VII

### As to Defendants J. Greenblatt, M. Greenblatt, Vogel and Rosenthal, Investing Income Derived From a Pattern of Racketeering Activity In an Enterprise Engaged in an Activity which Affects Trade or Commerce in New Jersey N.J.S.A. 2C:41-2(a)

116. The Attorney General repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

117. The enterprise, within the meaning of N.J.S.A. 2C:41-1(c), are the defendant entities each of which engaged in the business of offering for sale, purchasing and selling securities from, to or within New Jersey. At all times relevant, the defendant entities were engaged in trade or commerce or in activities affecting trade or commerce in connection with the offer, sale, purchase, promotion, negotiation, advertisement or distribution of securities to, from or within the State of New Jersey.

118. Defendants J. Greenblatt, M. Greenblatt, Vogel and Rosenthal (the "RICO Defendants") are persons within the meaning of N.J.S.A. 2C:41-19(b).

119. The RICO Defendants, in violation of N.J.S.A. 2C:41-2(a), received income, directly or indirectly, from a pattern of racketeering activity in the defendant entities.

120. The pattern of racketeering activity from which the income was received includes, but is not limited to, the fraud in the offering, sale or purchase of securities within the meaning of 2C:41-(1)(a)(p) to, from, and within New Jersey to investors who where primarily New Jersey residents.

121. As a result of the facts alleged above, the Rico Defendants, through the defendant entities violated <u>N.J.S.A.</u> 2C:41-2(a).

<b><u>COUNT VIII</u></b>

**As to Defendants J. Greenblatt, M. Greenblatt, Vogel and Rosenthal Participating In the Conduct of an Enterprise's Affairs Through a Pattern of Racketeering Activities. <u>N.J.S.A.</u> 2C:41-2(c)**

122. The Attorney General repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

123. The enterprise, within the meaning of <u>N.J.S.A.</u> 2C:41-1(c), are the defendant entities each of whom engaged in the business of offering for sale, purchasing and selling securities from, to and/or within New Jersey. At all times relevant, the defendant entities were engaged in trade or commerce or in activities affecting trade or commerce in connection with the offer, sale, purchase, promotion, negotiation, advertisement or distribution of securities to, from or within the State of New Jersey.

124. The RICO Defendants are persons as defined in N.J.S.A. 2C:41-1(b).

125. The RICO Defendants were employed by or associated with the defendant entities and conducted or participated, directly or indirectly, in the conduct of the affairs of these enterprises through a pattern of racketeering activity in violation of N.J.S.A. 2C:41-2(c) by engaging in fraudulent acts and practices in connection with the offer, sale or purchase of securities to, from or within the state of New Jersey, in violation of the Securities Laws. The RICO Defendants, among other things, participated in or were associated with the use of fraudulent sales practices in connection with the offer, purchase or sale of securities in violation of N.J.S.A. 49:3-52.

126. The fraudulent sale of those securities in and or though the defendant entities to the public constituted a pattern of racketeering activity.

127. As a result of the facts alleged, the RICO Defendants violated N.J.S.A. 2C:41-2(c).

## PRAYER FOR RELIEF - SECURITIES LAWS COUNTS I TO VI

**WHEREFORE**, as to Counts One through Six, plaintiffs respectfully request the entry of a judgment pursuant to N.J.S.A. 49:3-47 et seq.:

(A) Finding that the Individual Defendants and defendant entities engaged in the acts and practices alleged above;

(B) Finding that such acts and practices constituted violations of the Securities Law;

(C) Enjoining all the Individual Defendants and defendant entities from violating the Securities Law in any manner;

(D) Enjoining the issuance, sale, offer for sale, purchase, offer to purchase, promotion, negotiation, advertisement or distribution from, to or within New Jersey of the securities of any of the defendant entities and/or any other security as that term is defined in the Securities Law by any of the defendant entities, their officers, directors, managing members employees, agents, brokers, partners, stockholders, attorneys, successors, subsidiaries, affiliates and/or any of the Individual Defendants including their agents and anyone acting on their behalf;

(E) Freezing the assets of and enjoining the Individual Defendants and defendant entities, Estate of Vera Greenblatt and Alexandra Horvath from directly or indirectly disposing of, transferring, selling, dissipating, encumbering, liquidating, or withdrawing any assets or property owned or controlled by said defendants except that they may pay ordinary and necessary business expenses which have been approved in advance by the Receiver described below. These assets shall include, but are not limited to, accounts in any and all financial institutions, brokerage and trading accounts, real property, personal property, pension and retirement accounts;

(F)  Enjoining all defendant entities, their officers, directors, managing members, employees, agents, brokers, partners, stockholders, attorneys, successors, subsidiaries, affiliates and all Individual Defendants, and all persons who receive actual or constructive notice of this order, from destroying or concealing any books, records and documents relating in any way to the business, financial and personal affairs of all defendants, their successors, subsidiaries or affiliates;

(G)  Pursuant to <u>N.J.S.A.</u> 49:3-69, appointing a Receiver, to serve without bond, who will:

    (i)  immediately take into possession all of the assets of defendants whose assets are frozen including, but not limited to, holdings and interests in all financial institutions, brokerage and trading accounts, and undertake all actions necessary or appropriate to maintain optimal value of the assets, including the liquidation of any such assets;

    (ii)  review all the books and records of and pertaining to all defendants whose assets are frozen and report to the Court within 90 days of the requested Order:

        (a)  the identities of all investors of the defendant entities and creditors of all defendants whose assets are frozen, past and present, and the status of their account;

        (b)  the financial condition of all defendants whose assets are frozen, their successors, subsidiaries and affiliates; and

        (c)  a preliminary plan to distribute the assets of defendants to investors and creditors, including the Bureau;

-34-

(iii) determine the necessity of retaining professionals including, but not limited to, accountants and attorneys, to assist the receiver in fulfilling the receiver's responsibilities as ordered by the Court, and upon making a determination of necessity and obtaining plaintiffs' consent, make application to the Court for an order permitting the retention of such professionals by the Receiver;

(iv) be held harmless from and against any liabilities, including costs and expenses of defending claims, for which the Receiver may become liable or incur by reason of any act or omission to act in the course of performing the Receiver's duties, except upon a finding by this Court of gross negligence or willful failure of the receiver to comply with the terms of this or any other order of this Court, irrespective of the time when such claims are filed;

(v) be compensated out of the estate of all defendants whose assets are frozen, their successors, subsidiaries and affiliates;

(vi) be permitted to resign upon giving written notice to this Court and plaintiffs of the Receiver's intention to resign, which resignation shall not become effective until appointment by the Court of a successor, which shall be subject to plaintiffs' approval; and

(vii) have the full statutory powers to perform the Receiver's duties delineated in <u>N.J.S.A.</u> 49:3-69(c) and (d) and Title 14 of the New Jersey Statutes, Corporations, General, including, but not limited to, those set forth at <u>N.J.S.A.</u> 14A:14-1, <u>et seq.</u>, or so far as the provisions thereof are applicable.

(H) Affording each purchaser of securities issued by or on behalf of the defendant entities the option of rescinding such purchase and obtaining a refund of monies paid, plus interest and expenses incident to effecting the purchase and rescission;

(I) Affording each purchaser of securities issued by or on behalf of the defendant entities the option of receiving restitution for losses incurred on purchases of the securities, plus interest and expenses incident to effecting the purchase and restitution;

(J) Requiring all defendants to disgorge all profits and/or funds gained through violations of the Securities Law;

(K) Assessing the Individual Defendants and defendant entities civil monetary penalties for each incident of violating the Securities Law in accordance with <u>N.J.S.A.</u> 49:3-70.1; and

(L) Affording plaintiffs and affected third parties any additional relief the Court may deem just and equitable.

### <u>PRAYER FOR RELIEF - RICO COUNTS VII AND VIII</u>

**WHEREFORE,** as to Counts VII and VIII, Plaintiff Peter C. Harvey, Attorney General of New Jersey respectfully demands the entry of a judgment pursuant to <u>N.J.S.A.</u> 2C:41-4 against the RICO Defendants:

(A) Finding that the RICO Defendants engaged in acts and practices in violation of <u>N.J.S.A.</u> 2C:41-2;

(B) Declaring whether the RICO Defendants have any interest, direct or indirect, in the defendant entities and whether such interest should be divested.

(C) Permanently enjoining the RICO Defendants from engaging in any direct or indirect activity, in any capacity whatsoever,

relating to the offer, purchase or sale of securities from, to or within the State of New Jersey and from engaging in the same type of endeavor as the enterprise found to be in violation of <u>N.J.S.A.</u> 2C:41-2;

(D) Permanently enjoining the defendant entities from registration as broker-dealers and or issuers with the New Jersey Bureau of Securities;

(E) Permanently enjoining the RICO Defendants from having any direct or indirect ownership, management or supervisory interest in, or control of any broker-dealer and or issuer registered with the New Jersey Bureau of Securities;

(F) Declaring the amount of civil monetary penalties to be imposed as a deterrent against future violations in an amount three times the gain that the RICO Defendants acquired or maintained; and

(G) Any additional legal or equitable relief that the Court finds to be necessary and proper to effectuate remedial purposes and to prevent any continuing violations.

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiffs

By: _____
David M. Puteska
Deputy Attorney General

January 13, 2005

## RULE 4:5-1 CERTIFICATION

I certify that plaintiffs in this matter have not initiated any other civil action in any court of this State against defendants and are not now engaged in any arbitration proceeding against defendants, nor is any other civil action or arbitration proceeding contemplated. I certify that there is no other party who should be joined in this action.

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiffs

By: _____
David M. Puteska
Deputy Attorney General

January 13, 2005

## DESIGNATION OF TRIAL COUNSEL

Deputy Attorney General David M. Puteska is hereby designated as trial counsel for this matter.

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiffs

By: _____
David M. Puteska
Deputy Attorney General

January 13, 2005

**Jacob Gertsman**, of full age, certifies as follows:

1.   I am an Investigator with the New Jersey Bureau of Securities.

2.   I have read this Verified Complaint and verify that the information contained in this Verified Complaint is true and correct to the best of my knowledge, information and belief.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: January 13, 2005

Jacob Gertsman

# EXHIBIT B

PETER C. HARVEY
ATTORNEY GENERAL OF NEW JERSEY
Division of Law, 5th Floor
124 Halsey Street
P.O. Box 45029
Newark, New Jersey 07101
Attorneys for Plaintiffs



By:   David M. Puteska
      Deputy Attorney General
      (973) 648-4802

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION - COUNTY OF ESSEX
**Docket No. ESX-C-0015-05**

| | |
|---|---|
| PETER C. HARVEY, Attorney General of New Jersey and FRANKLIN L. WIDMANN, Chief of the New Jersey Bureau of Securities Securities, | : <br> : <br> :        Civil Action <br> : |
|                Plaintiffs, | : |
| v. | :  **ORDER FOR PRELIMINARY** <br> :  **INJUNCTION, ASSET FREEZE** <br> : **EXCEPT FOR PROPERTY OF THE** |
| JOSEPH GREENBLATT, individually, MAX GREENBLATT, individually and as co-Executor of the Estate of Vera Greenblatt, PETER F. VOGEL, individually and as Co-Executor of the Estate of Vera Greenblatt, ESTATE OF VERA GREENBLATT, JEROME M. ROSENTHAL, ALEXANDRA HORVATH, MAYWOOD CAPITAL CORP., a New Jersey corporation, MAYWOOD MANAGEMENT CORP., a New York corporation, TUMBLERS, INC., a New York corporation, TUMBLERS II, INC., a New York corporation, AP CONSTRUCTION ASSOCIATES, INC., a New York corporation, | :  **BANKRUPTCY ESTATE OF** <br> : **DEFENDANTS TO THE EXTENT** <br> :  **THE AUTOMATIC STAY IS** <br> : **OPERABLE AND APPOINTMENT** <br> :   **OF A RECEIVER AS TO ALL** <br> : **DEFENDANTS EXCEPT JEROME** <br> :        **ROSENTHAL** <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

MAYWOOD CONSOLIDATED PROPERTIES,   :
    INC., a New York corporation,   :
MAYWOOD CONSTRUCTION CORP.,   :
    a New York corporation,   :
942 ATLANTIC AVE. REALTY CORP.,   :
    a New York corporation,   :
VALUE CAPITAL GROUP, INC.   :
    a New York corporation,   :
113 BLAKE AVE. REALTY CORP.,   :
    a New York corporation,   :
11 BROOKLYN AVE. REALTY CORP.,   :
    a New York corporation,   :
883 CAULDWELL AVE. REALTY CORP.,   :
    a New York corporation,   :
162 CENTRAL AVE. REALTY CORP.,   :
    a New York corporation,   :
164 CENTRAL AVE. REALTY CORP.,   :
    a New York corporation,   :
917 EAGLE AVENUE REALTY CORP.,   :
    a New York corporation,   :
216 EDGECOMBE AVE. REALTY CORP.,   :
    a New York corporation,   :
2278 EIGHTH AVE. REALTY CORP.,   :
    a New York corporation,   :
1230 FRANKLIN AVE. REALTY CORP.,   :
    a New York corporation,   :
67 HANCOCK ST. REALTY INC.   :
    A New York corporation   :
1055 HERKIMER AVE. REALTY CORP.,   :
    a New York corporation,   :
190-01-190-13 HOLLIS AVE. REALTY CORP.,   :
    a New York corporation,   :
2006 HONEYWELL AVE. REALTY CORP.,   :
    a New York corporation,   :
161 HULL ST. REALTY CORP.,   :
    a New York corporation,   :
242 LENOX AVE. REALTY CORP.,   :
    a New York corporation,   :
2093 MADISON AVE. REALTY CORP.,   :
    a New York corporation,   :
2093 MADISON LLC,   :
    a New York corporation,   :

64 PATCHEN AVE. REALTY LLC,
      a New York corporation,
653-655 ROGERS AVE. REALTY CORP.,
      a New York corporation,
2035-2037 SEVENTH AVE. REALTY CORP.,
      a New York corporation,
957 ST. NICHOLAS AVE. REALTY CORP.,
      a New York corporation,
133 SUYDAM ST. REALTY CORP.,
      a New York corporation,
135 SUYDAM ST. REALTY CORP.,
      a New York corporation,
173 UTICA AVE. REALTY CORP.,
      a New York corporation,
49-51 & 55-57 WYONA ST. REALTY CORP.,
      a New York corporation,
243 EAST 118TH ST. REALTY CORP.,
      a New York corporation,
65-67 EAST 125TH ST. REALTY CORP.,
      a New York corporation,
77 EAST 125TH ST. REALTY LLC,
      a New York limited liability company,
79 EAST 125TH ST. CORP.,
      a New York corporation,
79 EAST 125TH STREET REALTY LLC,
      a New York limited liability company,
27 EAST 131ST ST. REALTY CORP.,
      a New York corporation,
6 EAST 132ND ST. APARTMENTS CORP.,
      a New York corporation,
6 EAST 132 ST. LLC,
      a New York limited liability company,
313 EAST 140TH ST. REALTY CORP.,
      a New York corporation,
335 EAST 140TH ST. REALTY CORP.,
      a New York corporation,
522 EAST 148TH ST. REALTY CORP.,
      a New York corporation,
108 WEST 119TH ST. APARTMENTS CORP.
      A New York corporation,
121 WEST 122ND ST. CORP.,
      a New York corporation,

148 WEST 124TH ST. REALTY CORP.,
    a New York corporation,
308 WEST 127TH ST. REALTY CORP.,
    a New York corporation,
358-360 WEST 127TH ST. REALTY CORP.,
    a New York corporation,
360 WEST 127TH ST. REALTY CORP.,
    a New York corporation,
18 WEST 129TH ST. REALTY CORP.,
    a New York corporation,
108 WEST 130TH ST. REALTY CORP.,
    a New York corporation,
304-306 WEST 133RD ST. REALTY CORP.,
    a New York corporation,
118-120 WEST 137TH ST. REALTY CORP.,
    a New York corporation,
142 WEST 139TH ST. REALTY LLC,
    a New York limited liability company,
459 WEST 147th STREET REALTY CORP.,
    a New York corporation,
459 WEST 147TH ST. REALTY LLC,
    a New York limited liability company
535 WEST 147TH ST. REALTY CORP.,
    a New York corporation,
549 WEST 147TH ST. REALTY CORP.,
    a New York corporation,
308 WEST 148TH ST. REALTY LLC,
    a New York limited liability company
515 WEST 148TH ST. REALTY CORP.,
    a New York corporation,
540 WEST 148TH ST. REALTY CORP.,
    a New York corporation,
536 WEST 149TH ST. REALTY CORP.,
    a New York corporation,
452 WEST 150TH STREET REALTY CORP.,
    a New York corporation,
510 WEST 159th ST. REALTY CORP.,
    a New York corporation,
544 WEST 160TH APARTMENTS CORP.,
    a New York corporation,

559 WEST 185TH ST. REALTY LLC,
     a New York limited liability company,       :

                        Defendants.        :

---

    This matter having been presented to the Court on the application of Peter C. Harvey, Attorney General of New Jersey, (Deputy Attorney General David M. Puteska appearing) and Franklin L. Widmann, Chief of the New Jersey Bureau of Securities, pursuant to N.J.S.A. 49:3-69(a), R. 4:52-1 and R. 4:67, by Order to Show Cause filed on January 13, 2005, and the Court having reviewed the Verified Complaint and supporting documents submitted therewith and the following defendants having received service of the aforementioned pleadings and submitted no opposition thereto: Joseph Greenblatt ("J. Greenblatt"), Max Greenblatt, individually, and as co-Executor of the Estate of Vera Greenblatt ("M. Greenblatt"), Peter F. Vogel, individually, and as co-Executor of the Estate of Vera Greenblatt ("Vogel") (collectively the "Individual Defendants"), Estate of Vera Greenblatt, Alexandra Horvath, Maywood Capital Corp., Maywood Management Corporation, Tumblers, Inc., Tumblers II, Inc., AP Construction Associates, Inc., Maywood Consolidated Corp., Maywood Construction Corp., Value Capital Group, Inc. and the following related corporate entities: 942 Atlantic Ave. Realty Corp, 113 Blake Avenue Realty Corp., 133 Blake Ave. Realty Corp., 11 Brooklyn Ave. Realty Corp., 883 Cauldwell Ave. Realty Corp., 162 Central Ave. Realty Corp., 164 Central Ave. Realty Corp., 917 Eagle Ave. Realty Corp., 216 Edgecombe Ave. Realty Corp., 2278 Eighth Ave. Realty Corp., 1230 Franklin Ave. Realty Corp., 67 Hancock St. Realty Inc., 1055 Herkimer Ave. Realty Corp., 190-01-190-13 Hollis Ave. Realty Corp., 2006 Honeywell Ave. Realty Corp., 161 Hull St. Realty Corp., 242 Lenox Ave. Realty Corp., 2093 Madison Ave. Realty Corp., 2093 Madison LLC, 64 Patchen Ave. Realty LLC, 653-655 Rogers Ave.

Realty Corp., 2035-2037 Seventh Ave. Realty Corp., 957 St. Nicholas Ave. Realty Corp., 133

Suydam St. Realty Corp., 135 Suydam St. Realty Corp., 173 Utica Ave. Realty Corp., 49-51 & 55-57

Wyona St. Realty Corp., 243 East 118th St. Realty Corp., 65-67 East 125th Street Realty Corp., 77

East 125th St. Realty LLC, 79 East 125th St. Corp., 79 East 125th St. Realty LLC, 27 East 131st St.

Realty Corp., 6 East 132nd St. Apartments Corp., 6 East 132 St. LLC, 313 East 140th St. Realty Corp.,

335 East 140th St. Realty Corp., 522 East 148th St. Realty Corp., 108 West 119th St. Apartments

Corp., 121 West 122 Street Realty Corp., 148 West 124th St. Realty Corp., 308 West 127th St. Realty

Corp., 358-360 West 127th St. Realty Corp., 360 West 127th St. Realty Corp., 18 West 129th St.

Realty Corp, 108 West 130th St. Realty Corp., 304-306 West 133rd St. Realty Corp., 118-120 West

137th St. Realty Corp., 142 West 139th St. Realty LLC, 459 West 147th St. Realty Corp., 459 West

147th St. Realty LLC, 535 West 147th St. Realty Corp., 549 West 147th St. Realty Corp., 308 West

148th St. Realty LLC, 515 West 148th Realty Corp., 540 West 148th St. Realty Corp., 536 West 149th

St. Realty Corp., 452 West 150th St. Realty Corp., 510 West 159th St. Realty Corp., 544 West 160th

Apartments Corp. and 559 West 185th St. Realty LLC (hereinafter the "Defendant Entities"), and for

good cause shown,

   IT IS on this __7th__ day of __March__ 2005, **ORDERED** as follows:

1.   All provisions of this Order shall be effective nunc pro tunc to February 18, 2005;

2.   The Individual Defendants and Defendant Entities, their officers, directors,

employees, agents, and attorneys, and such persons acting in concert or participation with any of

them, as receive actual notice of this order are preliminarily enjoined from violating the New Jersey

Uniform Securities Law (1997) (N.J.S.A. 49:3-47 to 76) (hereinafter the "Securities Law");

3.     Defendants J. Greenblatt, M. Greenblatt and Vogel and such persons acting in concert or participation with any of them, as receive actual notice of this Order, are preliminarily enjoined from violating <u>N.J.S.A.</u> 2C:41-1 <u>et seq</u>. (hereinafter the "RICO Law");

4.     The Individual Defendants and Defendant Entities, their officers, directors, employees, agents, and attorneys, and such persons acting in concert or participation with any of them, as receive actual notice of this order, are preliminarily enjoined from employing persons to act as unregistered broker-dealers, unregistered investment advisers or investment adviser representatives or unregistered agents in the State of New Jersey in violation of <u>N.J.S.A.</u> 49:3-56;

5.     The Individual Defendants and Defendant Entities, their officers, directors, employees, agents, and attorneys, and such persons acting in concert or participation with any of them, as receive actual notice of this order, are preliminarily enjoined from effecting or attempting to effect transactions in securities from, to or within New Jersey without being registered as broker-dealers, investment advisers or investment adviser representatives, or agents thereof, with the New Jersey Bureau of Securities, in violation of <u>N.J.S.A.</u> 49:3-56(a);

6.     The assets and property except for property of the bankruptcy estate of defendants to the extent the automatic stay is operable of the Individual Defendants, Defendant Entities, the Estate of Vera Greenblatt and Alexandra Horvath, wheresoever located, real or personal, including any and all bank accounts are preliminarily frozen in that said defendants shall not directly or indirectly dispose of, transfer, sell, dissipate, encumber, liquidate, or withdraw any assets or property, whether real or personal, owned or controlled by any of said defendants except for property of the bankruptcy estate of defendants to the extent the automatic stay is operable, pending further order of this Court.

No asset frozen under this order shall be liquidated until further order of this Court upon application of the Receiver appointed hereinunder;

7. The Individual Defendants and Defendant Entities, their officers, directors, employees, agents, and attorneys, and such persons acting in concert or participation with any of them, as receive actual notice of the order, by personal service or otherwise, are preliminarily restrained from destroying or concealing any books, records or documents directly or indirectly relating in any way to the business, financial and personal affairs of any defendants, their successors, subsidiaries or affiliates;

8. Any person with actual or constructive notice of this order who aids, abets, counsels, commands or instructs any person or entity to perform any act prohibited by this order or otherwise to violate any provision of this order is subject to punishment for violation of said order;

9. RICHARD D. TRENK, ESQ. of Booker, Rabinowitz, Trenk, Lubetkin, Tully DiPasquale & Webster, P.C., 100 Executive Drive, West Orange, New Jersey 07052 is hereby appointed to serve as Receiver, pursuant to N.J.S.A. 49:3-69, to serve without bond, and shall:

(a) immediately, except as to defendants with pending bankruptcy cases, immediately after compliance with Section 543 of the Bankruptcy Code, take into possession all of the defendants' assets that are frozen including, but not limited to, holdings and interests in all financial institutions, brokerage and trading accounts, and undertake all actions necessary or appropriate to maintain optimal value of the assets, including, following order of this Court, the liquidation of any such assets;

(b) within seven (7) days of a receipt of a filed copy of this order, all defendants whose assets are frozen, or their counsel, shall submit a proposed monthly budget to the Receiver. Within five (5) days of the receipt of the proposed budget from the individual defendants whose assets are frozen, or their counsel, submit a plan to the Court for the establishment of a reasonable monthly living expense to be paid to the defendants whose assets are frozen from the funds available in the receivership estate;

(c)    review all the books and records of and pertaining to all defendants whose assets are frozen and report to the Court within ninety (90) days of the entry of this order;

(d)    determine the identities of all investors of the defendants and creditors of all defendants whose assets have been frozen, past and present, and the status of their accounts;

(e)    ascertain the financial condition of all defendants whose assets are frozen, their successors, subsidiaries and affiliates;

(f)    draft a preliminary plan to distribute the defendants' assets to investors and creditors including the Bureau;

(g)    determine the necessity of retaining professionals including, but not limited to, accountants and attorneys, to assist the receiver in fulfilling the Receiver's responsibilities as ordered by the Court, and upon making a determination of necessity and obtaining Plaintiffs' consent, make application to the Court for an order permitting the retention of such professionals by the receiver;

(h)    be held harmless from and against any liabilities, including costs and expenses of defending claims, for which the receiver may become liable or incur by reason of any act or omission to act in the course of performing the receiver's duties, except upon a finding by this Court of gross negligence or willful failure of the receiver to comply with the terms of this or any other order of this Court, irrespective of the time when such claims are filed;

(i)    be compensated out of the estate of all defendants whose assets are frozen, their successors, subsidiaries and affiliates;

(j)    be permitted to resign upon giving written notice to this Court and plaintiffs of the Receiver's intention to resign, which resignation shall not become effective until appointment by the Court of a successor which shall be subject to plaintiffs' approval; and

(k)    have the full statutory powers to perform the Receiver's duties delineated in N.J.S.A. 49:3-69 (c) and (d) and Title 14A of the New Jersey Statutes, Corporations, General, including, but not limited to, those set forth at N.J.S.A. 14A:14-1 to 27, or so far as the provisions thereof are applicable.

10.    Within fifteen (15) days of the entry of this order, the Individual Defendants and

Defendant Entities shall turn over to the Receiver, at their sole cost and expense, a copy of any and

all books, records and documents, including those in electronic format, that relate in any way to the subject matter of this litigation and/or the related business affairs of all defendants. This request shall specifically include any passwords or other information necessary to provide the Receiver access to computerized data. This provision shall not include any documents that are subject to privilege unless otherwise ordered by this Court;

11.     The Individual Defendants and Defendant Entities shall file an answer or other responsive pleading as required by R. 4:5-1 et seq. or motion, if any, within forty-five (45) days from the date of the filing of this order;

12.     Plaintiffs shall serve one copy of this order upon all defendants or their attorneys, in the manner prescribed by R. 4:4-4 or R. 4:4-6, as appropriate within five (5) days of the entry hereof; and

13.     Plaintiffs shall be afforded such additional relief as the court may deem just and equitable.

Harriet F. Klein, J.S.C.

# EXHIBIT C

# SETTLEMENT AGREEMENT

This Agreement of Settlement and Compromise ("Settlement Agreement") is entered into as of the 31st day of August, 2006, between and among John S. Pereira, in his capacity as bankruptcy trustee for Maywood Capital Corp. ("Maywood") and its related debtors (the "Maywood Trustee"); Ian Gazes, in his capacity as bankruptcy trustee for the estates of Alexandra Horvath and Joseph Greenblatt (the "Horvath/Greenblatt Trustee"); Gregory Messer, in his capacity as bankruptcy trustee for the estate of Max Greenblatt (the "Max Trustee"); Alexandra Horvath, ("Alexandra") individually; Max Greenblatt, ("Max") individually and in his capacity as executor, trustee and beneficiary under the will dated February 26, 2003 (the "Will") of Vera Greenblatt deceased ("Vera") and as a beneficiary and trustee under The Vera Greenblatt Irrevocable Family Trust dated September 22, 2000 (the "Trust"); Richard Trenk, in his capacity as the duly appointed pre-petition state court receiver of the estate of Vera, of Max, of Alexandra, and of Joseph Greenblatt ("Joseph") pursuant to order dated March 7, 2005 (the "Receiver"); and Boris Davydov ("Davydov" or the "Purchaser"). The Maywood Trustee, the Horvath/Greenblatt Trustee and the Max Trustee are collectively referred to as the "Trustees". The "Maywood Debtors" (as hereinafter defined), Alexandra, Max and Joseph are collectively referred to as the "Debtors".

WHEREAS, on November 2, 2004, February 19, 2005 and March 10, 2005, Maywood and its related debtors (collectively, the "Maywood Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, by order dated March 24, 2005, the Court approved the appointment of the Maywood Trustee over the bankruptcy estates of the Maywood Debtors; and

WHEREAS, on November 29, 2005 Joseph Greenblatt ("Joseph"), an officer and shareholder of the Maywood Debtors, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code; and

WHEREAS, on December 8, 2005, Alexandra (the wife of Joseph) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code; and

WHEREAS, on December 6, 2005, Max (the husband of Vera and the father of Joseph, Jason and Karen) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code; and

WHEREAS, by order dated December 16, 2005, the Bankruptcy Court approved the appointment of the Horvath/Greenblatt Trustee for Joseph's estate; and

WHEREAS, on March 31, 2006, Alexandra's and Max's Chapter 11 cases were converted to cases under Chapter 7; and

WHEREAS, on April 3, 2006, the Horvath/Greenblatt Trustee was duly appointed as Chapter 7 Trustee for Alexandra's estate and the Max Trustee was duly appointed as Chapter 7 Trustee for Max's estate; and

WHEREAS, at the time of her bankruptcy filing, Alexandra was the owner of record of certain real properties (the "Alexandra Properties") consisting of a condominium located at 188 East 70th Street, Unit 5C, New York, New York 10021(the "NY Condo") and a single family residence located at 3Bridle Path, Westhampton Beach, New York 11978 (the" Westhampton Property"); and

WHEREAS, the Maywood Trustee asserts that solely Maywood Debtors' assets were used to purchase, finance, maintain and pay for the Alexandra Properties, and as a result thereof

2

has asserted equitable and legal claims against the Alexandra Properties including, but not limited to, equitable title and constructive trust claims; and

WHEREAS, Alexandra has disputed the Maywood Trustee's claims; and

WHEREAS, the Horvath/Greenblatt Trustee, in his capacity as trustee of Alexandra's estate, has a right to contest, and has reviewed, the claims asserted by the Maywood Trustee against the Alexandra Properties, as well as the claims asserted by Alexandra against the Alexandra Properties; and

WHEREAS, Alexandra has asserted rights to, and remains in possession of, the Alexandra Properties and has further asserted that the Maywood Trustee would have no rights in the Alexandra Properties other than unsecured claims against the Alexandra estate; and

WHEREAS, at the time of his bankruptcy filing, Max was the holder of a life estate interest in certain real properties consisting of a condominium located at 9801 Collins Avenue, Unit 7Q, Bal Harbor, Florida (the "Florida Condo") and a residence located at 6451 Dieterle Crescent, Rego Park, New York (the "Rego Park Property") (the Florida Condo and the Rego Park Property are collectively referred to as the "Max Properties", and the Max Properties and the Alexandra Properties are collectively referred to as the "Properties"); and

WHEREAS, prior to her death, Vera was the record owner of the Max Properties; and

WHEREAS, the Will and Trust provide that Max is to have a life interest in the Max Properties, and that upon Max's death, Vera's issue who are then living (currently Joseph, Jason Greenblatt ("Jason") and Karen Rothschild ("Karen")) are to receive any remainder interests in the Max Properties (Joseph, Jason and Karen are collectively referred to as the "Remaindermen" and their remainder interests are referred to as the "Remaindermen Interests"); and

WHEREAS, the terms of the Will provide that the Max Properties are transferable to Max during his lifetime, which would terminate the trusts under the Will and terminate the Remaindermen Interests; and

WHEREAS, Max represents that at the time of Max's bankruptcy filing, fee title to the Max Properties was still in the probate estate of Vera and had not been transferred to the trusts created under the Will; and

WHEREAS, Max represents that the Will and the Trust are the only testamentary and intervivos documents made by Vera in existence at the time of Vera's death, that the Will has been duly admitted to probate in Queens County Surrogates Court, and that Max is the sole serving executor and trustee under the Will and the sole serving trustee of the Trust; and

WHEREAS, Max represents that Jason and Karen, as Remaindermen under the Will, will waive their interests in the Max Properties; and

WHEREAS, the Horvath/Greenblatt Trustee has the rights of Joseph as Remainderman under the Will; and

WHEREAS, the Maywood Trustee contends that the Alexandra Properties and the Florida Condo were purchased, financed, maintained and paid for entirely with Maywood Debtors' assets, and that Maywood Debtors' assets were also used to make mortgage payments on the Rego Park Property, propositions that are challenged by Alexandra and Max; and

WHEREAS, the Maywood Trustee, on behalf of the Maywood Debtors, and as a result of the alleged use of Maywood Debtors' assets to purchase, finance, maintain and pay for the Alexandra Properties and the Florida Condo, and to make mortgage payments with respect to the Rego Park Property, has asserted claims against the Properties, and, in the absence of this

4

Settlement Agreement, would initiate litigation to assert those claims and to recover the Properties for the benefit of the Maywood Debtors' estates; and

WHEREAS, the Receiver, in his capacity as state court receiver of the estate of Vera, and as part of the enforcement of his rights as Receiver, has asserted rights in the Max Properties, including the right to transfer and/or sell the Max Properties; and

WHEREAS, Max has contested the Receiver's and the Maywood Trustee's claims against the Max Properties; and

WHEREAS, the Max Trustee, in his capacity as trustee of Max's estate, has a right to contest, and has reviewed, the claims asserted by the Maywood Trustee against the Max Properties; and

WHEREAS, the Maywood Trustee has advised Alexandra, Max, the Horvath/Greenblatt Trustee and the Max Trustee that in the absence of this Settlement Agreement he would commence, on behalf of the Maywood Debtors estates and their creditors, fraudulent conveyance and other actions to recover the Properties, and that he would assert equitable title and lien claims and constructive trust claims against the Properties on behalf of the Maywood Debtors and their creditors; and

WHEREAS, the Maywood Trustee, the Horvath/Greenblatt Trustee, the Max Trustee, the Receiver, Alexandra and Max (collectively the "Settling Parties") are desirous of settling certain claims between and among them pursuant to the terms of this Settlement Agreement and coming to an amicable resolution without the expense and risks of extensive litigation that would otherwise occur in this matter; and

WHEREAS, to facilitate the effectuation of the settlement contained herein, Purchaser has agreed to purchase the NY Condo and all its contents for a total purchase price of $1.65

million (the "NY Condo Purchase Price"), all cash, subject to the entry of an order of the

Bankruptcy Court approving this Settlement Agreement and authorizing the sale (the "NY

Condo Sale") of the NY Condo under Section 363 of the Bankruptcy Code, free and clear of

liens, claims, encumbrances and interests, except for any and all easements, covenants and

conditions recorded against the NY Condo as well as any non-monetary violations of any

governmental or quasi-governmental agencies (the "Permitted Exceptions") with any such liens,

claims, encumbrances and interests to attach to the proceeds of the NY Condo Sale; and

WHEREAS, as part of this settlement, Alexandra consents, subject to Bankruptcy Court

approval, to the Horvath/Greenblatt Trustee's NY Condo Sale to Purchaser, and to the net

proceeds of the NY Condo Sale being paid to the Maywood Trustee for the benefit of the

Maywood Debtors' estates and their creditors; and

WHEREAS, as part of this settlement, the Horvath/Greenblatt Trustee agrees to transfer

title to the Westhampton Property to the Maywood trustee for the benefit of the Maywood

Debtors' estates so the Maywood Trustee can sell the Westhampton Property pursuant to a sale to

be conducted by the Maywood Trustee under Section 363 of the Bankruptcy Code (the

"Westhampton Property Sale") and so that the net proceeds of such sale will be available for the

Maywood Debtors' estates and their creditors; and

WHEREAS, as part of this settlement, Alexandra consents to the Westhampton Property

Sale by the Maywood Trustee and waives any and all of her claims in the Westhampton Property

and its proceeds; and

WHEREAS, the Horvath/Greenblatt Trustee and Purchaser have prepared a mutually

acceptable written contract (the "Contract"), a copy of which is annexed hereto as Exhibit A, for

the purchase and sale of the NY Condo, and

6

WHEREAS, Purchaser has executed the Contract and tendered to the Horvath/Greenblatt Trustee the non-refundable deposit as required therein; and

WHEREAS, Alexandra has asserted claims against the Alexandra Properties including, but not limited to, her claim to a homestead exemption pursuant to Section 522 of the Bankruptcy Code; and

WHEREAS, the Trustees, the Receiver and Alexandra have conferred and agreed to resolve and settle the claims of the Maywood Trustee and the Receiver against the Alexandra Properties, and to resolve their respective claims to the Alexandra Properties; and

WHEREAS, pursuant to this Settlement Agreement, Alexandra has agreed to waive all of her rights and claims to the Alexandra Properties, including, but not limited, to her claim to a homestead exemption; and

WHEREAS, the Settling Parties have agreed to this Settlement Agreement to facilitate the maximum recovery on the Properties without the need for additional litigation; and

WHEREAS, as a result of this Settlement Agreement, the net proceeds of the sale of the Alexandra Properties are preserved for the benefit of the Maywood Debtors' estates; and

WHEREAS, the Receiver and Max assert various claims and rights in the Max Properties; and

WHEREAS, the Remaindermen could assert their Remainderman Interests in the Max Properties; and

WHEREAS, in order to facilitate this Settlement Agreement, the Settling Parties have agreed that the Max Trustee shall, in exchange for total cash consideration of $350,000 (the "Max Settlement Amount") transfer insurable title in the Max Properties to Davydov in accordance with the title reports dated August 29, 2006, with respect to the Rego Park Property

and August 11, 2006, with respect to the Florida Condo (collectively the " Max Properties Title Reports"), subject to all mortgages and liens of record actually appearing in the Max Properties Title Reports and subject to any and all taxes of record, but otherwise free and clear of all liens, claims and encumbrances, including the Remaindermen Interests of Joseph, Jason and Karen(the "Max Properties Insurable Title"), provided further that any and all transfer taxes, fees and capital gains taxes, if any, resulting from the transfer of the Max Properties to Davydov will be paid by Davydov and not the Max Trustee or the Max estate up to a maximum amount of $56,000 ("Max Tax Escrow"); and

WHEREAS, Max, as the sole serving executor of the Will and the sole serving trustee under the trusts under the Will and under the Trust, and the Receiver, subject to the approval of the Superior Court of New Jersey (the "NJ Court"), each agree to execute deeds and/or other appropriate instruments or documents transferring title to the Max Properties and its contents in accordance with this Settlement Agreement; and

WHEREAS, the Receiver shall receive $100,000 of the Max Settlement Amount in exchange for his consent to the sale of the Max Properties and its contents (the "Max Properties Sale"), his execution of any deeds or other instruments or documents necessary with respect to the transfer of the Max Properties, and for his release of any and all claims against the Max Properties and the Alexandra Properties; and

WHEREAS, the Maywood Trustee shall receive $200,000 of the Max Settlement Amount in exchange for his release of any and all claims of the Maywood Debtors' estates against the Max Properties or their contents; and

WHEREAS, Davydov shall execute this Settlement Agreement and deposit $50,000 (the "Max Properties Deposit") with the Max Trustee upon such execution, and shall remit the

8

balance (i.e. $300,000) of the Max Settlement Amount, and shall deposit the Max Tax Escrow with the Max Trustee pending a final determination of tax liability pursuant to Section 505 of the Bankruptcy Code, at a closing to take place at the later of (a) 30 days after entry of an order approving this Settlement Agreement by the Bankruptcy Court, or (b) 60 days after the date of this Settlement Agreement; and

WHEREAS, Davydov shall deposit $200,000 (the "NY Condo Deposit") with the Horvath/Greenblatt Trustee upon execution of this Settlement Agreement and the Contract and shall remit the balance (i.e. $1.45 million) of the NY Condo Purchase Price at a closing to take place at the later of (a) 30 days after entry of a order by the Bankruptcy Court approving this Settlement Agreement, or (b) 60 days from the date of this Settlement Agreement; and

WHEREAS, Alexandra warrants and represents that the schedules filed in her bankruptcy case reflect all of her assets as of her petition date (the "Alexandra Scheduled Assets") and that other than the Alexandra Scheduled Assets, which she acknowledges may have been purchased with or derived from assets of the Maywood Debtors, she has no title to and nor is she in possession of or have any interest in any tangible or intangible assets or property of any kind purchased with or derived from the assets of the Maywood Debtors; and

WHEREAS, Max warrants and represents that the schedules filed in his bankruptcy case reflect all of his assets as of his petition date (the "Max Scheduled Assets") and that other than the Max Scheduled Assets, which he acknowledges may have been purchased with or derived from assets of the Maywood Debtors, he has no title to and nor is he in possession of or have any interest in any tangible or intangible assets or property of any kind purchased with or derived from the assets of the Maywood Debtors; and

9

WHEREAS, Davydov warrants and represents that he has never been involved in any business affairs with the Maywood Debtors, Joseph, Alexandra or Max (other than this Settlement Agreement), that he has never received and nor is he in possession of any tangible or intangible property or assets of any of the Debtors, directly or indirectly, that the assets used to purchase the Max Properties and the NY Condo are solely his assets and are not the assets of any of the Debtors or the Debtors' creditors, and that, prior to the closing of the NY Condo Sale and the Max Properties Sale, Davydov shall disclose to the Trustees and the Receiver the source of all funds remitted by him under this Settlement Agreement; and

WHEREAS, the Horvath/Greenblatt Trustee has analyzed the value of the NY Condo and determined, in his business judgment, that the purchase price of $1.65 million is a fair price for the NY Condo, especially in light of the value of the compromise of Alexandra's claims and the ability of the Horvath/Greenblatt Trustee and the Maywood Trustee to sell the Alexandra Properties promptly; and

WHEREAS, the Max Trustee has determined, in his business judgment, that the Settlement Agreement is fair and reasonable, and an expedient way to deal with the title issues in connection with the Max Properties; and

WHEREAS, to facilitate the implementation of this Settlement Agreement, the Trustees will promptly file a motion or motions in their respective estates seeking to compromise and settle the claims being resolved herein pursuant to Bankruptcy Rule 9019, and, as part thereof, to approve the transfer of the NY Condo and the Max Properties to Purchaser pursuant to Section 363 of the Bankruptcy Code, without any higher or better solicitation, and to approve the transfer of the Westhampton Property to the Maywood Trustee under the terms of this Settlement Agreement.

10

NOW, THEREFORE, in consideration of the mutual covenants contained herein, it is agreed, by and among the Settling Parties and the Purchaser (collectively the "Parties"), as follows:

1. <u>Incorporation of Recitals.</u> The aforesaid recitals and covenants are incorporated as if fully restated herein.

2. <u>Execution of Contract of Sale or other Sale Agreement.</u> Upon the execution of this Settlement Agreement by all of the Parties: (a) the Horvath/Greenblatt Trustee and Davydov will execute the Contract, and Davydov shall deposit the NY Condo Deposit in the amount of $200,000 with the Horvath/Greenblatt Trustee; and (b) the Max Trustee and Davydov will execute such contract of sale or other sale agreement as is necessary for the Max Trustee to transfer title to the Max Properties to Davydov, and Davydov shall deposit the Max Properties Deposit in the amount of $50,000 with the Max Trustee.

3. <u>Deposits, Liquidated Damages and Provisions for Sale of Max Properties and NY Condo in the event Purchaser Fails to Close.</u> Each deposit for the purchase of the respective properties provided for in this Settlement Agreement shall be non-refundable, and shall serve as liquidated damages with respect to the purchase of that property in the event a closing as to such property does not take place in the time frame set forth herein, unless (i) the cause for such closing not to occur is the disapproval by the Bankruptcy Court of this Settlement Agreement, (ii) with respect to the Max Properties, the Max Trustee is unable to convey Max Properties Insurable Title, in which case the Max Properties Deposit shall be returned to Purchaser, or (iii) with respect to the NY Condo, the Horvath/Greenblatt Trustee is unable to convey title to the NY Condo free and clear of liens, claims, encumbrances and interests, except the Permitted Exceptions, in which case the NY Condo Deposit shall returned to Purchaser. Anything to the

contrary notwithstanding, in the event the Horvath/Greenblatt Trustee is able to close on the NY Condo Sale in accordance with the terms of this Settlement Agreement, and Davydov fails to timely close (time being of the essence as to Davydov's obligation to close) then the Horvath/Greenblatt Trustee shall retain the NY Condo Deposit as liquidated damages and promptly sell the NY Condo at a public sale pursuant to Section 363 of the Bankruptcy Code. In that event, the NY Condo Deposit being retained as liquidated damages shall be deemed part of the proceeds of sale of the NY Condo for purposes of distribution of sale proceeds as hereinafter provided. Furthermore, and notwithstanding anything to the contrary contained herein, in the event that the Max Trustee is able to close in accordance with this Settlement Agreement, and Davydov fails to timely close (time being of the essence as to Davydov's obligation to close), then the Max Trustee shall have the right to sell the Max Properties pursuant to a public sale under Section 363 of the Bankruptcy Code, to the extent necessary to obtain the $300,000 balance of the Max Settlement Amount plus all of the actual fees, expenses and taxes incurred in any such sale (the "Sale Costs"). Any proceeds or properties remaining after a sale by the Max Trustee and the payment of the $300,000 balance of the Max Settlement Amount plus the Sale Costs will be remitted to Davydov. Notwithstanding the foregoing, for a period of thirty (30) days following receipt of a written notice from the Max Trustee of Davydov's failure to close on the Max Properties, Davydov may remit the $300,000 balance of the Max Settlement Amount plus the Sale Costs and the Max Tax Escrow to the Max Trustee and obtain the transfer of the Max Properties. Anything to the contrary notwithstanding, the Max Properties Deposit shall only serve as a deposit for the Max Properties Sale and the NY Condo Deposit for the NY Condo Sale, and there shall be no obligation to close on one as a condition to closing on the other. Except as otherwise provided in this Settlement Agreement, the failure to close on either

12

property shall cause the deposit on that property to be forfeited as liquidated damages, and the Purchaser shall have no further liability beyond the deposit.

4.     Sale of the Westhampton Property.  Upon the Bankruptcy Court Approvals, the Horvath/Greenblatt Trustee, in settlement of the Maywood Trustee's claims and asserted causes of action to recover the Westhampton Property for the benefit of the Maywood Debtors' estates, will transfer title to the Westhampton Property (the "Westhampton Property Transfer") to the Maywood Trustee, pursuant to a quit claim deed, free and clear of all liens, claims and encumbrances including but not limited to the claims of the Alexandra estate and Alexandra, but subject to any valid mortgages and liens of record on the Westhampton Property.  In consideration for transferring title to the Westhampton Property to the Maywood Trustee, the Maywood Debtors' estates shall indemnify the Greenblatt/Horvath Trustee and the Alexandra estate from any and all taxes, if any, that may arise from the Westhampton Property Transfer. That obligation, if any, shall constitute an administrative claim of the Maywood Debtors' estates, and shall be payable in the event of a final determination of any such liability under Section 505 of the Bankruptcy Code.  The Maywood Trustee shall have the right to review and comment on any tax return filed by the Horvath/Greenblatt Trustee, and the Maywood Trustee may file and or participate in any action in the Bankruptcy Court to determine that tax liability, if any, under Section 505 of the Bankruptcy Code.  Pending any such final determination, the Maywood Trustee shall escrow an amount sufficient to pay any such tax liability.  The Maywood Trustee shall market and sell the Westhampton Property (the "Westhampton Property Sale") under Section 363 of the Bankruptcy Code, and upon the closing of such sale, and after payment of or reserve for any valid mortgages or liens of record on the Westhampton Property, retain the net

proceeds for the benefit of the Maywood Debtors' estates. Alexandra consents to the
Westhampton Property Transfer and the Westhampton Property Sale.

     5.    <u>Bankruptcy Court Approvals</u>. Promptly after the execution of this Settlement
Agreement, the Trustees will apply to the Bankruptcy Court for orders in their respective estates
approving this Settlement Agreement, the Contract, the NY Condo Sale, the Max Properties Sale
and the Westhampton Property Transfer in accordance with this Settlement Agreement (the
Bankruptcy Court orders contemplated by this paragraph being collectively referred to as the
"Bankruptcy Court Approvals").

     6.    <u>Failure to Obtain Bankruptcy Court Approval</u>. This Settlement Agreement will
be null and void and of no further force and effect if all of the Bankruptcy Court Approvals have
not been entered by September 29, 2006.

     7.    <u>Closings</u>. Within 30 days after the Bankruptcy Court Approvals, but no earlier
than 60 days from the date of this Settlement Agreement, the Horvath/Greenblatt Trustee and the
Max Trustee will schedule and conclude the Closings (the "Closings") of the sale of the NY
Condo and the Max Properties, pursuant to the terms of the Contract and this Settlement
Agreement. The Closings of the NY Condo and the Max Properties may take place
independently of each other. Upon closing, Davydov shall have the right to finance, sell or
transfer the Max Properties, free and clear of the Remaindermen Interests of Joseph, Jason and
Karen.

     8.    <u>Application of the Sales Proceeds</u>. (a) At the Closing on the NY Condo, after the
payment of, or the reserve for, valid liens on the NY Condo, the Horvath/Greenblatt Trustee will
retain the sum of $20,000 (the "Alexandra Creditor Fund") for the benefit of the Alexandra
estate, plus a reserve not to exceed $310,000 (the "Alexandra Reserve Fund") to pay all of the

14

administrative expenses (including, but not limited to: Trustee's commissions; Chapter 7 professional fees and expenses; all taxes relating solely to the NY Condo, if any, including capital gains taxes, transfer taxes, and income taxes; and any unpaid Chapter 11 expenses, including attorneys' fees and expenses for Chapter 11 debtor's counsel) of the Alexandra bankruptcy case. (Of the Alexandra Reserve Fund, $60,000 shall be reserved for Chapter 7 professional fees and expenses, and $64,000 shall be reserved for the fees and expenses of Chapter 11 debtor's counsel). The balance of the sale proceeds will be paid immediately to the Maywood Trustee for the benefit of the Maywood Debtors' estates at the Closing. The Horvath/Greenblatt Trustee, in consult with the Maywood Trustee, shall seek a prompt determination under Section 505(b) of the Bankruptcy Code as to any tax liabilities of the Alexandra estate. Any unused portion of the Alexandra Reserve Fund shall also be paid to the Maywood Trustee when the Alexandra case is closed. (b) At the closing of the Max Properties, the Max Trustee shall: (i) retain the sum of $50,000 for the benefit of Max's estate (the "Max Reserve Fund"), including for the payment of all Chapter 7 and Chapter 11 administrative expenses of the Max case; (ii) remit $200,000 to the Maywood Trustee for the benefit of the Maywood Debtors' estates; and (iii) remit $100,000 to the Receiver for the payment of the legal fees and expenses of the state court receivership, subject to the terms and conditions stated herein. The Receiver has represented that he believes that he will require the approval of the NJ Court to consent to the terms and conditions of this Settlement Agreement and to effectuate that portion of this Settlement Agreement as it relates to him as Receiver. The Receiver has agreed to seek such NJ Court approval at least 15 days prior to the hearing date set by the Bankruptcy Court to approve this Settlement Agreement. The Parties agree that the approval or non-approval by the NJ Court shall have no legal bearing or effect as to whether the Bankruptcy

Court should approve this Settlement Agreement, but is being sought by the Receiver because the Receiver believes that the NJ Court approval may be necessary for him to enter into this Settlement Agreement. Anything to the contrary notwithstanding, in the event the Receiver is unable to obtain NJ Court approval, and the Receiver and/or the NJ Bureau of Securities or other New Jersey enforcement agency objects to the approval of the Settlement Agreement, then the Max Settlement Amount shall be reduced to $250,000, and the Receiver shall not be entitled to the $100,000. The Parties further agree that, notwithstanding that this Settlement Agreement contemplates that Jason and Karen will waive their interests in the Max Properties, under the provisions of the Will the Max Properties could be transferred to Max during his lifetime, which would terminate the trusts under the Will and the Remaindermen Interests of Jason, Karen and Joseph. In the event either Jason or Karen does not consent to the Max Properties Sale so that the transfer to Davydov can occur, the Parties agree that such consent or non-consent shall have no legal bearing on whether the Bankruptcy Court should approve this Settlement.

9.    Releases. Upon the Bankruptcy Court Approvals and the distribution of the sale proceeds from the NY Condo to the Maywood Trustee pursuant to this Settlement Agreement, the Maywood Debtors' estates and the Receiver will be deemed to have waived and released any claims or causes of action they may have against the NY Condo and the Alexandra Creditor Fund. Upon the Bankruptcy Court Approvals, Alexandra will be deemed to have waived or released any claims or causes of action she may have against the Debtors and the Alexandra Properties, including, but not limited to, Alexandra's claim to a homestead exemption. Upon the Bankruptcy Court Approvals, the Horvath/Greenblatt Trustee shall be deemed to have waived or released any claims or causes of action he may have against the Maywood Debtors and their estates, except for the indemnification obligation set forth in paragraph 4 above. Upon the

16

Bankruptcy Court Approvals and the payment and distribution of the Max Settlement Amount to the Max Trustee, the Maywood Trustee and the Receiver as set forth herein, the Max Trustee, the Maywood Trustee, the Horvath/Greenblatt Trustee, the Receiver and Max (in all his representative capacities), shall be deemed to have waived or released any claims or causes of action they may have as against the Max Properties, and the Max Trustee shall be deemed to have waived any claims Max's estate may have as against the Debtors and the Properties, and the Maywood Trustee shall be deemed to have waived any claims of the Maywood Debtors to the Max Reserve Fund. Upon the Bankruptcy Court Approvals, Max will be deemed to have waived or released any claims or causes of action he may have against the Properties, the Debtors and their estates.

10.    Consent to Sale.  Upon the execution of this Settlement Agreement and the Bankruptcy Court Approvals, Alexandra consents to the sale of the Alexandra Properties and the distribution of the proceeds in accordance with the terms of this Settlement Agreement, and Max consents to the sale of the Max Properties and the distribution of the Max Settlement Amount in accordance with the terms of the Settlement Agreement.  In the event Purchaser fails to close on the NY Condo in accordance with the terms of this Settlement Agreement, the Horvath/Greenblatt Trustee shall promptly take any and all steps necessary to sell the NY Condo at a public sale, pursuant to section 363 of the Bankruptcy Code, and Alexandra hereby consents to such sale and to the distribution of the proceeds of such sale as set forth in this Settlement Agreement.

11.    Cooperation.  The Parties agree to cooperate and execute any and all documents to effectuate the terms and conditions of this Settlement Agreement.

17

12.     Representations and Covenants.  Alexandra, Max and Davydov agree that the representations and warranties attributed to them as set forth in the WHEREAS provisions in this Settlement Agreement are accurate, acknowledge that the Trustees are relying on those representations in entering into this Settlement Agreement, and agree that such representations and warranties survive the Closings under this Settlement Agreement, the Contract or any sale agreement.  Alexandra, Max and Davydov further represent and warrant that any financial information provided to the Trustees or the Receiver in connection with the negotiation of this Settlement Agreement, or in connection with the Closings, is accurate and complete, and acknowledge that the Trustees are relying on such information in entering into this Settlement Agreement.  Anything to the contrary notwithstanding, in the event the Trustees believe that any of the Purchaser's representations or warranties are false or misleading, then the Trustees may apply to the Bankruptcy Court, prior to closing, to return the Max Properties Deposit and the NY Condo Deposit to the Purchaser and void this Settlement Agreement and the Contract.  In that event, there shall be no right to withhold such deposits from the Purchaser.  Any rights which the Trustees or Receiver may have as a result of any misrepresentation or false representation are fully reserved.

13.     Waiver of Claim.  Upon entry of the Bankruptcy Court Approvals, Alexandra and Max will be deemed to have withdrawn any and all claims against the Properties, the Debtors and their respective estates, whether recorded, filed or unfiled, and Alexandra and Max shall be deemed to have waived any and all such claims.

14.     Miscellaneous.

(a)     This Settlement Agreement shall not be deemed an admission of liability by any Party.

18

(b)     This Settlement Agreement shall be governed and construed pursuant to the laws of the State of New York. Any and all disputes arising, directly or indirectly, out of or relating to this Settlement Agreement and its terms, and all actions to enforce this Settlement Agreement and its terms, shall be adjudicated in the Bankruptcy Court and the Parties hereby expressly and irrevocably submit to the exclusive jurisdiction of such court in any suit, action or proceeding arising, directly or indirectly, out of or relating to this Settlement Agreement.

(c)     This Settlement Agreement constitutes the entire agreement of the Parties, and may not be modified except by a writing executed by all of the Parties.

(d)     This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument.

(e)     The Parties acknowledge effective assistance of counsel in the negotiation, drafting and execution of this Settlement Agreement, and agree that it shall not be construed for or against any Party on the basis of drafting responsibility.

(f)     This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and each and all of their respective successors, assigns, heirs and personal representatives but only after it has been approved by the Bankruptcy Court. If this Settlement Agreement is not approved by the Bankruptcy Court, the Parties shall be returned to their respective positions, the same as if this Settlement Agreement had not existed or been executed, and nothing contained in this Settlement Agreement, the Motion or the arguments of counsel and the statements of the Parties in support of Court approval of this Settlement Agreement shall be deemed admissible or used by either party to the prejudice of the other party in any subsequent litigation.

19

(g)     The parties agree to execute and deliver any and all such other documents reasonably requested by each other and cooperate fully with each other in order to consummate the transactions contemplated in this Settlement Agreement. In the event of an inconsistency between this Settlement Agreement and the Contract, the Settlement Agreement shall control.

(h)     Any further obligation on behalf of Max and Alexandra to provide the Receiver with weekly financial statements, to the extent such obligations continued subsequent to their bankruptcy filings, are discontinued.

NYC 612143.3 60031 00002 8/31/2006 04:03pm

___/s/ John S. Pereira_____

John S. Pereira, as Trustee for
the Maywood Debtors
150 East 58th Street, 14th Floor
New York, NY 10155

___/s/ Ian J. Gazes_____

Ian Gazes, as Trustee for
Alexandra Horvath and Joseph Greenblatt
32 Avenue of the Americas
New York, NY 10013

_/s/ Gregory Messer_____

Gregory Messer, as Trustee for
Max Greenblatt
26 Court Street
Brooklyn, NY 11201

_/s/ Richard Trenk_____

Richard Trenk, as Receiver
Booker, Rabinowitz, Trenk Lubetkin, Tully,
DiPasquale & Webster, P.C.
100 Executive Drive
Suite 100 West Orange, NJ 07052

___/s/ Alexandra Horvath_____

Alexandra Horvath
188 East 70th Street. 5C
New York, NY 10021

_/s/ Max Greenblatt_____

Max Greenblatt
6451 Dieterte Crescent
Rego Park, NY 11374

___/s/ Boris Davydov_____

Boris Davydov
1455 55th Street #6D
Brooklyn, NY 11219

STATE OF NEW YORK      )

COUNTY OF                    )

On the __ day of August in the year 2006 before me, the undersigned, a Notary Public in and for the State of New York, personally appeared Alexandra Horvath, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that her executed the same in her capacity, and that by her signature on the instrument, the individual executed the instrument.

                                                       /s/ Mary C. Stephenson
                                                       Notary Public

STATE OF NEW YORK      )

COUNTY OF                    )

On the __ day of August in the year 2006 before me, the undersigned, a Notary Public in and for the State of New York, personally appeared Max Greenblatt, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that her executed the same in her capacity, and that by her signature on the instrument, the individual executed the instrument.

                                                       /s/ Abraham Backenroth
                                                       Notary Public

STATE OF NEW YORK      )

COUNTY OF                    )

On the __ day of August in the year 2006 before me, the undersigned, a Notary Public in and for the State of New York, personally appeared Boris Davydov, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that her executed the same in her capacity, and that by her signature on the instrument, the individual executed the instrument.

                                                       /s/ Aaron C. Ambalu
                                                       Notary Public

22

**EXHIBIT D**



## *State of New Jersey*

JON S. CORZINE
*Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
PO Box 45029
NEWARK, NJ 07101

ZULIMA V. FARBER
*Attorney General*

JUNE 30, 2006

**VIA FACSIMILE AND REGULAR MAIL**
See Attached Service List

     Re:   <u>Harvey v. Joseph Greenblatt, et al.</u>
                Docket No. ESX-C-0015-05

Dear Gentlemen:

It is my understanding that negotiations are underway between the Bankruptcy Estates of Joseph Greenblatt, Alexandra Horvath, Max Greenblatt, the consolidated Maywood entities, and certain Greenblatt "family members," who have yet to be disclosed, for the purchase of four homes located in Florida, Rego Park, New York City, and West Hampton Beach. Because the Receiver in the New Jersey State Court action has an interest in at least two of these properties, the transaction will have to be approved in Superior Court. If information, such as the parties to the transaction, the source of the funds, appraisals of the properties, the contract price, <u>etc.</u>, is not provided to me in advance for my client's review, my client may feel compelled to direct me to oppose any such motions for approval in the Superior and Bankruptcy Courts.

To help ensure that such a situation does not occur and to avoid any delay in recovering assets for the benefit either the victims of the alleged fraud in Superior Court or creditors in the bankruptcy proceedings, please include me and the Receiver in your ongoing negotiations.



I look forward to working with all parties in interest in effectuating a fair and reasonable transaction.

Very truly yours,

ZULIMA V. FARBER
ATTORNEY GENERAL OF NEW JERSEY

By: _____
Christopher W. Gerold
Deputy Attorney General

cc:     Franklin L. Widmann, Chief of the Bureau of Securities (via email)
        Amy Kopleton, Deputy Bureau Chief (via email)
        James Lane, Supervising Investigator (via email)
        Michael LaChapelle, Investigator (via email)
        Anna Lascurain, Deputy Attorney General, Section Chief (via email)
        Victoria Manning, Deputy Attorney General, Assistant Section Chief (via email)
        Toral Joshi, Deputy Attorney General (via email)

SERVICE LIST

| | |
|---|---|
| **John P. Campo, Esq.**<br>LeBoeuf, Lamb, Greene & MacRae, LLP<br>125 West 55th Street<br>New York, NY 10019<br>(212) 424-8500 (fax)<br><br>Attorney for John S. Pereira (Trustee) | **John S. Pereira, Esq.**<br>150 East 58th Street<br>24th Floor<br>New York, NY 10155<br>(212) 751-6950 (fax)<br><br>Trustee for Maywood Consolidated |
| **David Carlebach, Esq.**<br>Law Offices of David Carlebach, Esq.<br>40 Exchange Place<br>New York, NY 10005<br>(212) 785-3618 (fax)<br><br>Attorney for Max Greenblatt | **Schuyler G. Carroll, Esq.**<br>Arent Fox PLLC<br>1675 Broadway<br>New York, NY 10019<br>(212) 484-3990 (fax)<br><br>Attorney for Boston Investor Group |
| **Sam Della Fera, Jr., Esq.**<br>Booker, Rabinowitz, Trenk, Lubetkin,<br>Tully, DiPasquale & Webster<br>100 Executive Drive<br>Suite 100<br>West Orange, NJ 07052<br>(973) 243-8677 (fax)<br><br>Attorney for Richard Trenk (Receiver) | **Richard D. Trenk, Esq.**<br>Booker, Rabinowitz, Trenk, et al.<br>100 Executive Drive<br>Suite 100<br>West Orange, NJ 07052<br>973-243-8677 (fax)<br><br>Receiver |
| **Abraham Backenroth, Esq.**<br>Backenroth Frankel & Krinsky, LLP<br>489 Fifth Avenue<br>New York, NY 10017<br>(212) 644-0544 (fax)<br><br>Attorney for Alexandra Horvath | **Gregory M. Messer, Esq.**<br>Law Offices of Gregory Messer, PLLC<br>395 Pearl Street<br>2nd Floor<br>Brooklyn, NY 11201<br>(718) 797-5360 (fax)<br><br><br>Trustee |

| | |
|---|---|
| **Mark A. Frankel**<br>Backenroth Frankel & Krinsky, LLP<br>489 Fifth Avenue<br>New York, NY 10017<br>(212) 644-0544 (fax)<br><br>Attorney for Alexandra Horvath | **Ian J. Gazes**<br>Gazes LLC<br>32 Avenue of the Americas<br>27th Floor<br>New York, NY 10013<br><br>(212) 765-9675 (fax)<br>Trustee |
| | |
| | |